A01A2196. WAGNER v. THE STATE.
(560 SE2d 754)

SMITH, Presiding Judge.

Clarence Wagner was indicted by a Fulton County grand jury for the offenses of rape, statutory rape, and aggravated child molestation. He was tried by a jury. The trial court directed a verdict on the child molestation charge at the close of the State's case, and the jury found Wagner guilty of the remaining two counts. Following the denial of his amended motion for new trial, Wagner appeals from the judgment of conviction and sentence. He raises eight enumerations of error, challenging the admission of certain evidence, the trial court's refusal to allow him to introduce evidence of prior false accusations by the victim or to impeach the victim's testimony on cross-examination, the trial court's excusing a juror for cause and failure to exclude a different juror for cause, and the trial court's denial of his motion for mistrial based on juror misconduct. We find no reversible error, and we affirm.

Construed to support the jury's verdict, the evidence presented at trial showed that the victim, who was 14 at the time, was living with her aunt when the incident occurred. Wagner, who was the victim's cousin, and Deon Warner, her uncle, visited the home during the early morning hours of April 11, 1996. The victim testified that while she was speaking on the telephone in a bedroom, Wagner came in and lay down close to her on the bed, prompting her to move to

another room so she could continue her telephone conversation in privacy. Wagner knocked on the door of that room and told her to follow him downstairs so she could lock the door when he left. When she did so, however, Wagner grabbed the phone, pushed the victim into the room, and "snatched" off her shirt and her bra and then her jeans. When the victim began screaming, Wagner grabbed her under the arms and forced her into a different room. Although she told him she was "too young for that to happen to me," and she was "screaming and hollering for" her uncle, he "slammed" her on the bed, penetrated her, and then hit her. When he finished, before leaving he told her "how sorry he was and that he was sick." The victim told her uncle that Wagner had raped her, and her uncle called the police. The victim was taken to the hospital, where she was examined by a doctor. A rape kit was not performed, but the victim testified that hair and semen samples were collected.

Warner testified that Wagner had just been released from jail and he and Wagner had been out celebrating. They did not have a ride back to Warner's home, so they decided to spend the night at Warner's sister's home, where the victim was staying. At about 5:00 a.m., the victim came running downstairs, "crying hysterically." She reported that Wagner had raped her and confirmed upon questioning that he had penetrated her. He called the police, who responded and drove them to the hospital.

A City of Atlanta Police Department detective was called to investigate. He testified that the victim first appeared to be upset, somewhat confused, and reluctant to speak to him, but she later "opened up" and discussed the rape with him. After learning where Wagner was located, he obtained an arrest warrant, and Wagner was arrested.

1. Wagner challenges the admission of evidence placing his character in issue.

(a) He maintains that his right to due process of law under the Georgia and United States Constitutions was violated when the trial court allowed the State to introduce evidence of his previous conviction for aggravated assault as a similar transaction. He maintains it was not sufficiently similar because in the prior crime, the sexual assault was on an adult woman, whereas in the charged incident, the victim was a minor. The trial court "reluctantly" admitted this evidence to show Wagner's bent of mind.

We find no error. "[I]n the area of sexual offenses, the admissibility of similar transaction evidence is liberally construed. [Cit.]" *McBee v. State*, 228 Ga. App. 16, 19 (1) (491 SE2d 97) (1997). In addition, when

> forcible sexual assaults are involved, there is at least much sociological evidence to support the conclusion that this type

> of deviant sexual behavior is a sufficiently isolated abnormality so that proof of the propensity of the defendant to engage in it is at least admissible, and to this extent proof of the one tends to establish the other.

(Citations and punctuation omitted.) Id. at 18-19 (1). The crime need not be identical to the charged crime to be admissible. *Brooks v. State*, 230 Ga. App. 846, 847 (1) (498 SE2d 139) (1998). Here, the similar transaction involved a forcible sexual assault, as did the charged crime. And when the crimes are similar, the difference in the victims' ages need not render the similar transaction inadmissible. See, e.g., *Tucker v. State*, 191 Ga. App. 648 (382 SE2d 425) (1989) (similar transaction admitted even though victim of prior offense was 24 and charged crime involved 12-year-old). Here, the similar transaction and the charged crime were sufficiently similar. Both occurred in the early morning hours in a bedroom of a residence where the accused had been invited, and both involved forcible sexual assault. We find no error in the admission of the prior crime.

(b) Wagner contends that his right to due process of law was also violated when the court allowed the State to present evidence of the date he was released from prison on his prior conviction for aggravated assault. The State argued at trial that this evidence was part of the similar transaction and that it was relevant to show bent of mind, course of conduct, and motive.

Wagner argues that since he made no reference to his prior incarceration and it was not relevant to his motive, intent, or course of conduct, it was inadmissible; the fact that he had just been released from prison had nothing to do with these things. Unlike the situation in *Greer v. State*, 199 Ga. App. 106 (403 SE2d 825) (1991), where the accused stated that he was on probation, just got out of prison, and would not have committed the crime, id. at 107 (1), Wagner argues that he did not use his release from prison as part of his defense and it had no relevance to bent of mind or course of conduct.

But the challenged evidence was cumulative of other evidence, since the State introduced a certified copy of the prior conviction, as well as the testimony of the victim of the prior aggravated assault. We have determined that this testimony was properly admitted. In addition, Warner testified that he and Wagner had been out celebrating Wagner's release from prison. Wagner did not object to that testimony. Even assuming, therefore, that admission was error, it was harmless. *Jowers v. State*, 245 Ga. App. 773, 776 (6) (538 SE2d 853) (2000).

(c) Citing *Eiland v. State*, 213 Ga. App. 838 (445 SE2d 765) (1994), Wagner complains that the trial court allowed the indictment in the prior crime to be admitted into evidence even though he pled

guilty to a lesser offense. But in *Eiland*, the defendant pled guilty to two counts of child molestation and then withdrew his plea, later pleading guilty to two counts of sexual battery. The original indictment, showing the original guilty plea, was later admitted into evidence as a similar transaction in Eiland's unrelated subsequent trial on three counts of child molestation, notwithstanding a judge's previous ruling that the indictment must be redacted. This court held that this was error because the indictment showed that the defendant had pled guilty to child molestation, which was not true, and child molestation involves a different intent than sexual battery. Id. at 839. Here, the offense of sexual battery, to which Wagner pled, involves the intent to rape, with which Wagner was charged in the prior crime. In addition, in *Eiland* no other evidence of the prior crime was admitted. Here, the State presented the testimony of the victim of the similar transaction, and her testimony supported the charge in the indictment. Under these circumstances, it was not error to admit the prior indictment.

2. Wagner contends the trial court erred in refusing to allow him to present evidence that the victim made a false allegation against another person. Wagner sought to show that the victim had also accused her grandfather of molesting her. Evidence of prior false accusations by a rape victim does not fall within the proscription of the rape shield law, but before admitting such evidence the trial court must determine outside the presence of the jury that a reasonable probability exists that such accusations were false. *Strickland v. State*, 205 Ga. App. 473 (422 SE2d 312) (1992). The court held a hearing on this matter and determined that a reasonable probability did not exist that the accusation against the victim's grandfather was false.

At the hearing, both the grandfather and a Department of Family & Children Services (DFACS) worker testified. A pending indictment existed against the grandfather, accusing him of child molestation and aggravated sexual battery against the victim. The grandfather was therefore given the *Miranda* warnings, and he testified that the charges against him were not true and that his granddaughter had fabricated them because she was angry at him. He testified that the victim had made up lies against other people when she was angry, including one which caused her mother to lose custody of her children. He testified before the jury that the victim's reputation for truthfulness was "bad" and that she should not be believed under oath. The caseworker testified that no physical evidence existed of molestation, that absence of such evidence is usual in a case involving fondling, and that because of the lack of such evidence DFACS had closed the case against the grandfather as unconfirmed.

This evidence did not show that the victim's accusation against

her grandfather was false. The grandfather simply gave his opinion that it was false. This unsupported testimony is insufficient. *Gilmer v. State*, 234 Ga. App. 309, 310 (2) (506 SE2d 452) (1998). The caseworker's testimony similarly did not show that the allegation was false; it showed merely that DFACS could not confirm the allegation with physical evidence, which was not unusual in that type of case. Regardless of this testimony, an indictment remained pending against the grandfather. Contrary to Wagner's suggestion, the fact that an accused states that the accusation against him is false is hardly evidence sufficient to raise a "reasonable probability" of falsity. The trial court did not err.

3. Wagner also asserts that the trial court erred in refusing to allow him to impeach the victim's testimony on cross-examination or to offer substantive evidence to impeach her. The victim testified on direct examination that she told Wagner she was "too young for that to happen to me." Defense counsel asked the victim to explain this statement, and the State interposed an objection based upon the rape shield statute, OCGA § 24-2-3. The trial court sustained the objection. Wagner moved for mistrial, which was denied. Defense counsel made an offer of proof consisting of his own statement that the defense and the State both had records indicating that the victim had been sexually active.

Relying on *Jones v. State*, 190 Ga. App. 416 (379 SE2d 189) (1989), he argues that since the import of her testimony was that she was too young to engage in sex, he had the right to prove that she had already done so, as a matter of impeachment. In *Jones*, the defense to the rape charge was consent. The defendant sought to show that the victim was not a virgin, as she had indicated to the examining physician. The trial court prohibited this line of questioning based upon the rape shield law because the victim had not testified to her virginity or referred to her statement to the doctor. This court affirmed the trial court's prohibition but said: "Had the victim in fact represented at trial that she was a virgin prior to her encounter with defendant, evidence of her prior sexual activity would have been admissible for impeachment. [Cit.]" Id. at 417 (1). This is consistent with established law that the rape shield law will not be applied to permit perjured testimony. When a victim voluntarily testifies to her lack of sexual experience, she waives her protection under the shield and may be impeached with proof of prior sexual acts. *Villafranco v. State*, 252 Ga. 188, 194-195 (2) (313 SE2d 469) (1984).

Had the offer of proof included a question put to the victim asking what she meant by her statement, and had the victim responded that she meant she was too young to have sex, we would be inclined to agree with Wagner. But her statement was ambiguous, at best. As in *Jones*, supra, the victim did not testify directly as to her virginity,

and we conclude that the trial court did not abuse its discretion in sustaining the objection and denying the motion for mistrial.

4. Wagner claims error in the denial of his motion for mistrial made on the ground of juror misconduct. This refers to an incident that occurred during jury deliberations, when some of the jurors informed the court that one juror had driven to the neighborhood where the crime took place. The juror in question testified that he drove through the area without stopping, "just on plain curiosity," and then told the other jurors his impression of the area. He told them it was a low-income housing project, and if you slowed your car people would approach and ask you what you need, at least implying prostitution and drugs.

Upon questioning by the court, that juror indicated that his trip to the scene had been made because he had been familiar with the area approximately ten or fifteen years ago, and he wanted to see if it had changed. He testified his visit would not affect any decision he would make as a juror in the case. In fact, at that point the jury had already reached a verdict as to one count of the indictment. The juror did indicate that he told other jurors that he drove through the area, but he said he had not "discussed" it. He informed the trial court that the "only thing we talked about was the evidence that was given in this court." The remaining jurors were then questioned extensively. Two jurors indicated they felt that the juror's observation of the scene had some influence on that juror's thinking about the case, but the overwhelming impression left by the jurors was that they had admonished that juror for doing something they had been instructed not to do and that the information had not and would not play any part in their decision in the case.

In considering possible juror misconduct, the trial court must consider whether a reasonable possibility exists that the improper action contributed to the jury's verdict. *Brooks v. State*, 265 Ga. 548, 550 (5) (458 SE2d 349) (1995). We agree with the State that the juror's conduct in this case, although unfortunate, did not necessitate a new trial. First, the remaining jurors were questioned carefully, and the trial court was satisfied that they were not influenced.

Second, the cases cited by Wagner, such as *Bobo v. State*, 254 Ga. 146 (327 SE2d 208) (1985), involved issues that could be influenced by a view of the scene, such as whether adequate lighting existed or the dimensions of the store in which the crime took place. Here, in contrast, since the charged crime took place inside the victim's home, it is difficult to discern the harm that could be occasioned by a juror's observations of the neighborhood. Regardless of the character of the surrounding area, the issue for decision was whether the victim had been raped. Even if error occurred, therefore, it was harmless.

5. In his last two enumerations of error, Wagner contends the

trial court abused its discretion during jury selection by excusing one juror for cause and failing to strike another for cause.

(a) The juror who was stricken for cause was a convicted felon who had completed his sentence under the First Offender Act and was discharged. At the beginning of voir dire, the jurors were asked as a group whether any of them had been convicted of a crime or knew anyone who had been convicted. The juror in question did not respond. He further failed to disclose his conviction upon individual questioning. When this juror's conviction for drug possession came to the court's attention, the juror admitted the conviction. He was, in fact, prosecuted by the same prosecutor's office involved in the trial. The juror also admitted he had a friend who was a convicted felon but had not mentioned that fact, either.

Wagner argues that this juror should not have been excused for cause because if he was discharged under the First Offender Act, he had no felony conviction. OCGA § 42-8-62; see *Gunter v. State*, 182 Ga. App. 548 (356 SE2d 276) (1987). A juror's failure to respond truthfully to a question may be insufficient to disqualify him or her if that failure is the result of an honest mistake. See *Gainesville Radiology Group v. Hummel*, 263 Ga. 91, 94 (428 SE2d 786) (1993). We need not attempt to determine whether this juror's failure to respond to the question of whether any jurors had been convicted of a crime was a correct response, under the law, because it is clear that the juror was simply untruthful in concealing the fact that he had a friend who had been convicted of murder. The subject matter of this particular failure to respond truthfully suggests possible bias.

"Moreover, a defendant has no vested interest in a particular juror but rather is entitled only to a competent and impartial jury. Thus, even assuming that the trial court wrongfully dismissed the prospective juror, the error affords no ground for appeal if, in the end, [the defendant's] case was heard by a competent and unbiased jury." (Citations omitted.) *Scott v. State*, 219 Ga. App. 906, 907 (1) (467 SE2d 348) (1996).

(b) Wagner asserts that legal cause existed to strike another juror and the trial court abused its discretion for not striking him. This juror informed the court during voir dire that he was in the process of selling his home and moving to a new home. He felt that given this personal business, he could not concentrate on the trial. He also admitted prejudice against the judicial system because a family member had been murdered by a repeat offender.

The juror himself, however, characterized his housing concern as "trivial," and disclosed that he felt the trial was "important also." Upon further questioning, the juror indicated that he had previously served on a jury that reached a verdict in a criminal trial and that he

could listen to the evidence and set any possible bias aside. This juror was therefore rehabilitated.

Wagner cites this court's recent decision in *Walls v. Kim*, 250 Ga. App. 259 (549 SE2d 797) (2001), in support of his argument that "rehabilitating" jurors "has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors." Id. While we certainly agree that judges should err on the side of caution by dismissing biased jurors, significant differences in the bias involved in the *Walls* case and this one persuade us that the trial judge in this case did not abuse his discretion in failing to excuse him for cause. In *Walls*, a wrongful death action against a doctor, the potential juror was a nurse who had worked with the defendant. She stated her hope that "the case would [come] out in favor of" the doctor, id. at 261, although she also denied a bias, but the judge refused to excuse her for cause. That juror was objectionable because of her personal interest in the case and personal relationship with one of the parties. Regardless of any claim of impartiality such a juror might make, ordinary human experience teaches that some bias would enter the deliberative process.

No such personal interest was evident in the juror challenged by Wagner. Most jurors have personal business that will be impeded by serving on a jury, yet most realize, as did this juror, the importance of such service. Although negative feelings about "the judicial system" should dictate caution in qualifying a juror, such feelings would be directed against the State as well as the defendant. We conclude, therefore, that the trial court did not abuse its discretion in declining to strike this juror for cause.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 21, 2002.

*Zell & Zell, Rodney S. Zell*, for appellant.
*Paul L. Howard, Jr., District Attorney, Anne E. Green, Amira S. AbuBakr, Assistant District Attorneys*, for appellee.