A02A0858. WARDLAW v. THE STATE.
(571 SE2d 578)

POPE, Senior Appellate Judge.

Corey Wardlaw appeals following his conviction on one count of hijacking a motor vehicle, one count of armed robbery and two counts of possession of a firearm during the commission of a felony. He asserts that the trial court erred in failing to sustain his challenge to two jurors. Because we find that the trial court did not abuse its discretion in failing to excuse these jurors, we affirm.

The evidence at trial showed that on May 28, 1999, Wardlaw and an accomplice approached the driver of a black Isuzu Rodeo and his companion, in the parking lot of a discount store. The accomplice pointed a gun at the driver's chest and demanded the keys to the car. The driver relinquished his keys to Wardlaw, who then got into the

[8] See *McSwain*, supra at 63.
[9] *McSwain*, supra at 64.

Rodeo with his accomplice and drove away. Two other individuals followed them in a white Nissan Maxima.

After police received a report of the incident and a description of the stolen car, a Gwinnett County police officer spotted the Rodeo with the Maxima following it and went after them. Wardlaw stopped the car, and he and the accomplice briefly joined the others in the Maxima. Wardlaw and the accomplice then exited the Maxima and ran into a wooded area. A short time later, Wardlaw and his accomplice were discovered hiding in the woods by police. Wardlaw was convicted following a jury trial.

Wardlaw contends that the trial court erred in denying his request to excuse two jurors, each of whom had family members who had been the victim of violent crimes in the past.

### Juror Eggleston

The first was juror Eggleston, who revealed during voir dire that her mother and sister had each experienced a prior violent crime. Eggleston stated that over four years earlier, her mother had been mugged by three men and badly hurt, and that two years earlier her sister had been the victim of a mugging and attempted carjacking. Both incidents occurred in Miami, Florida, and neither incident resulted in any arrest or conviction. Eggleston said that she was dissatisfied with the way the police had handled both incidents.

When Eggleston was asked by the State whether these incidents would affect her judgment in the case, she replied, "Truthfully, I have no idea. I'd have to see how the trial played out." In response to questioning by one of the defense attorneys, she stated that she did not know whether it would affect her ability to serve as a juror until she knew the specifics of the case. She stated that everyone deserved a fair trial and that she would try to be impartial. At one point, she stated that if the victim were a "little old lady" she did not know if she could be impartial, but if it were anyone else, she "might be able to."

Eggleston was questioned again the following day. At that time, she stated that she had spoken with her sister overnight and felt "probably more" that she could not be fair and impartial. She also said that she probably could not be fair and unbiased, although she said that she would try. In attempting to explain her somewhat contradictory answers, Eggleston stated that without knowing any of the facts of the Wardlaw case, she could only draw a direct parallel with her mother's incident. She stated:

> And so I find myself relating to my mother's incidents more than I would on any other kind of case. And so knowing that,

I would say that I would really be very consciously trying not to make that an issue. And that's — I mean, you know, I can't say, yes, I'm going to say these boys are guilty when I don't know any of the circumstances.

The trial court then intervened to confirm that Eggleston understood that the incidents involving her mother and sister were entirely separate from the incident in the present case. The trial judge went on to question her, as follows:

The Court: So you could sit on the jury, listen to the evidence, make up your own mind about the facts in the case and take the law the Court gives you in charge and that fairly and impartially?
Eggleston: Yes.
The Court: As a matter of fact you said you would even make an extra effort to be impartial in this case and not to draw that parallel; is that right?
Eggleston: Right. I would try to do that.

### *Juror Hall*

Wardlaw also asserts error in the trial court's refusal to excuse juror Hall for cause. Hall informed the court about an incident four years earlier where her son had been attacked with a knife, resulting in a "nasty scar." Hall stated that she still got very emotional when she thought about the incident and that incident might "give her pause" if she was chosen as a juror. Nevertheless, she said that she could be fair and impartial and that she would follow the law.

\*\*\*\*

The decision whether to strike a juror for cause lies within the trial court's discretion and will only be disturbed upon an abuse of that discretion. *Rocha v. State*, 248 Ga. App. 53 (1) (545 SE2d 173) (2001). And in order to strike a juror for bias, there must be evidence that the juror is so inured in his position that he will be unable to set his bias aside: "Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." (Citation omitted.) Id.

Although both jurors expressed some doubts about being able to put the prior incidents aside, both indicated that they could be fair and impartial. Juror Eggleston said that she would not allow the incidents in her family to predetermine guilt in this case. In fact, she stated she would put extra effort into being impartial in light of the

prior incidents in the case. Moreover, we note that Eggleston indicated that not only had she been affected by the violence toward her family, but also expressed dissatisfaction with the manner in which law enforcement handled the prior incidents. Therefore, any concerns she had arising from the earlier crimes potentially could be directed against the state as well as the defendant. See *Wagner v. State*, 253 Ga. App. 874, 881 (5) (b) (560 SE2d 754) (2002). Juror Hall also indicated that she could put the experience with her son aside and follow the law.

Based upon our review of the voir dire, we find no indication that either juror was so biased that she could not render an impartial verdict based upon the evidence in this case. Accordingly, we find that the trial court did not abuse its discretion in denying Wardlaw's request to excuse these jurors.

> A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences. A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference.

(Citations and punctuation omitted.) *Upshaw v. State*, 249 Ga. App. 741, 743 (1) (549 SE2d 526) (2001).

We note that neither of these situations presented "a case where the trial court coercively 'rehabilitated' a prospective juror who had expressed well-founded doubts about being able to serve impartially because of a close relationship with one of the parties or because of extrajudicial knowledge of the events at issue." (Citations omitted.) *Torres v. State*, 253 Ga. App. 318, 320 (2) (558 SE2d 850) (2002). Compare *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002); *Powell v. Amin*, 256 Ga. App. 757 (569 SE2d 582) (2002) (trial court's decision to qualify juror reversed where prospective juror had financial or working relationship with party).

*Judgment affirmed. Ruffin, P. J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

I fully concur in the result in this case, because in light of the attorneys' thorough questioning of these jurors, the trial court did not err in refusing to dismiss them for cause. I write separately to emphasize that the trial court's talismanic questions alone were insufficient to rehabilitate these jurors. The trial court asked the

first juror if she "could sit on the jury, listen to the evidence, make up your own mind about the facts in the case and take the law the Court gives you in charge and that fairly and impartially?" It then asked the second juror, "You stated that you could be fair and impartial in this case and you could set aside any personal feelings about what happened to your son and judge this case on its merits and the law that the Court charged you and the evidence as you find it to be; is that correct?" Both jurors responded, not surprisingly, in the affirmative.

The Supreme Court of Georgia recently held that, when a prospective juror has a close relationship with a party, "the trial court must do more than 'rehabilitate' the juror through the use of any talismanic question." *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002). The same should hold true for a prospective juror who shows bias. "[T]he effect of the court's questions in this case about laying aside her [bias] was more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality." (Citation and punctuation omitted.) *Cannon v. State*, 250 Ga. App. 777, 780 (1) (552 SE2d 922) (2001), overruled in part on other grounds, *Jackson v. State*, 254 Ga. App. 562, 566-567 (4) (562 SE2d 847) (2002). Trial courts must do more than ask the formulaic question of whether a juror can be fair and impartial, because "a juror may be found disqualified even though he insists he is not biased; therefore, the juror's opinion of his qualification is by no means determinative." *Jones v. State*, 232 Ga. 324, 330 (206 SE2d 481) (1974).

For these reasons I respectfully concur specially.

DECIDED SEPTEMBER 27, 2002.

*Edwin J. Wilson*, for appellant.

*Daniel J. Porter, District Attorney, Jennifer Kolman, Assistant District Attorney*, for appellee.