A02A0933. IVEY v. THE STATE.
(574 SE2d 663)

PHIPPS, Judge.

A jury found John Ivey guilty of armed robbery. Ivey's motion for new trial was denied. On appeal, he contends that the trial court erred in refusing to excuse a certain juror for cause and in denying his motion for mistrial based on juror misconduct. He also challenges the sufficiency of the evidence. Because the record reveals that the trial court erred in its refusal to excuse the juror, we reverse. We find the evidence was sufficient and need not address Ivey's contention of juror misconduct.

1. Construed in the light most favorable to the verdict, the evidence showed that on August 27, 1999, a man who had been seen standing at a pay phone in the parking lot of a convenience store entered the store, grabbed the clerk from behind, pressed the blade of a green box cutter against her throat, and ordered her to open the cash register. She complied. The man took money from the register and then fled. Two men who had been sitting in their car parked near the store's front door observed the incident, saw the robber's face, noted his clothing, and watched him run toward a nearby motel. The clerk and one of the eyewitnesses immediately reported the incident to police.

Responding police officers went to the motel and instructed two occupants of a truck to exit the vehicle. Ivey was the passenger. His physical appearance and clothing matched that of the reported rob-

ber. A green box cutter was found on the passenger side of the truck's dashboard. Within 30 minutes of the robbery, police transported Ivey and the driver to the store. Although the clerk was unable to identify him, the two men who had observed the robbery identified Ivey as the perpetrator. In addition, testimony of one of Ivey's co-workers placed Ivey at a pay phone outside the store around the time of the robbery.

In support of his challenge to the sufficiency of the evidence, Ivey points to what he claims are weaknesses and inconsistencies in the evidence. But such issues were for the jury to decide.[1] This court does not weigh the evidence or determine credibility. We determine only whether the evidence, viewed in the light most favorable to the jury's verdict, was sufficient under the standard of *Jackson v. Virginia*.[2] So long as some competent evidence supports each element necessary to prove the State's case, we will uphold the jury's verdict.[3] Here, the evidence was sufficient for the jury to find Ivey guilty of armed robbery beyond a reasonable doubt.[4]

2. Ivey contends that the trial court erred in refusing to excuse for cause Juror No. 9, who had been the victim of another armed robbery.

As we observed in *Walls v. Kim*,[5]

> In too many cases, trial courts confronted with clearly biased and partial jurors use their significant discretion to "rehabilitate" these jurors by asking a version of this loaded question: After you hear the evidence and my charge on the law, and considering the oath you take as jurors, can you set aside your preconceptions and decide this case solely on the evidence and the law? Not so remarkably, jurors confronted with this question from the bench almost inevitably say, "yes." Such biased jurors likely even believe that they can set aside their preconceptions and inclinations — certainly every reasonable person wants to believe he or she is capable of doing so. Once jurors affirmatively answer the "rehabilitation" question, judges usually decide to retain these purportedly rehabilitated jurors.

In *Walls*, we expressly disagreed with "the way that the 'rehabilitation' question has become something of a talisman relied upon by

[1] See *Williams v. State*, 254 Ga. App. 8 (1) (561 SE2d 149) (2002).
[2] 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); see *Williams*, supra.
[3] See *Cox v. State*, 243 Ga. App. 790 (534 SE2d 464) (2000).
[4] *Thorne v. State*, 246 Ga. App. 741 (1) (542 SE2d 157) (2000).
[5] 250 Ga. App. 259 (549 SE2d 797) (2001), aff'd, *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002).

trial and appellate judges to justify retaining biased jurors."[6] While *Walls* was a civil case, such use of the rehabilitation question is clearly also improper in criminal cases. This case is an example of such improper use by a trial court, which resulted in an abuse of the court's discretion in its refusal to dismiss a juror who was biased against one party.

During voir dire, the court told the panel that Ivey was charged with armed robbery. It then proceeded to the first statutory qualification question pursuant to OCGA § 15-12-164 (a), asking any juror who had "formed and expressed any opinion in regard to the guilt or the innocence of the accused" to stand. Juror No. 9 stood. The court asked that juror again whether she had already made a determination about Ivey's guilt or innocence, and she replied that she "may be prejudiced" because she had been the victim of an armed robbery. When the court asked a third time whether she had already formed an opinion about Ivey's guilt or innocence of the offense charged, Juror No. 9 replied, "Not this one." The court then asked the juror whether she would be able to listen to the evidence and make a decision based solely on it. She replied, "I don't believe so." The court next asked her whether she was "pre-committed" to finding Ivey innocent or guilty based simply on the fact that she had been a victim, and she answered, "Yes, sir." The court persisted, asking whether she believed she would be able to limit her decision-making to the evidence presented, and she again answered, "No, sir."

Having heard Juror No. 9 answer at least four times that she could not be a fair and impartial juror in this case, Ivey's attorney asked that she be removed for cause. The court responded, "I haven't got there yet," and then invited both sides to ask the juror additional questions. The prosecutor accepted and set out to rehabilitate her.

Juror No. 9 acknowledged that she understood that as a juror she would be called upon to decide Ivey's guilt or innocence, but reasserted that even after hearing the evidence, her experience as a victim of an armed robbery could still affect her ability to decide Ivey's case impartially. The prosecutor pressed, "But you would want to listen to all the evidence and hear all that before you made a decision. Would you do that?" Although the juror said, "Sure," when the prosecutor asked her the same question again, she retracted to: "I'll try. I will try to make an impartial decision." Then the prosecutor added to his rehabilitation effort the weight of the court, telling the juror,

> [the court] would instruct the jurors . . . that unless and until evidence is presented that convinces a juror of guilt

---

[6] *Walls*, supra, 250 Ga. App. at 259.

*beyond a reasonable doubt, then the verdict that the juror should return is not guilty. . . . If you were selected as a juror, hypothetically selected as a juror and [the court] told you, or instructed you, about the Defendant's presumption of innocence, could you give him that presumption?*[7]

At that point, Juror No. 9 relented, "Yes," and said that she would wait until she had heard all the evidence before deciding whether Ivey was guilty. Yet, the prosecutor continued to grill her, asking, "And if, based upon the evidence that you heard as a juror, you did not believe that the State had persuaded you or proved his guilt beyond a reasonable doubt, could you vote to find him not guilty?" The record shows that at that point the court, not the juror, said, "Yes." The prosecutor then ended his questioning of Juror No. 9, and Ivey's attorney renewed his motion to strike her for cause.

The court, however, then asked the juror to explain "what appears to be conflicting answers." She restated her position that because her experience as an armed robbery victim still affected her, she did not know whether hearing the evidence would make a difference. The trial court resorted to the rehabilitation question.

COURT: Yes, ma'am, I understand that. Basically, what we've got to do and we're not taking light of what the situation you've got and you are being very conscientious in trying to answer our questions and I appreciate that. What we've got to do for you is know if you could make your decision based solely on the evidence you hear in this courtroom, not based on your experience that you've undergone. Because we're not trying the case that happened to you in Michigan. We're trying a case that . . . happened in Glynn County, Georgia and that this particular defendant has been charged with. And you've heard [the prosecutor] say and I will charge the jury, that the burden is upon the State to prove the guilt of anyone charged with an offense beyond a reasonable doubt. And if they cannot do that, then the jury would be instructed to acquit the Defendant. If they do not find, based on the evidence that they hear: the testimony, the documents, if they do not feel that the State has met its burden of proving the guilt of an accused beyond a reasonable doubt, then they are to acquit that defendant. But they are to make that decision based on the evidence they hear in

---

[7] (Emphasis supplied.)

this courtroom, not on what they bring in from another case. Do you understand the difference? Now then, that's what I was trying to ask you. And the questions I appraise to you were, could you make your decision, if you were picked as a juror — I don't know that you would or would not be, because there's more jurors here than we need to try the case. We will choose from among you all a jury. So the question is: If you are picked as a member of this jury panel, would you be able to make a decision based solely on the evidence you hear in this courtroom and any documents or exhibits admitted into evidence by the Court as to determining what the facts are in this case and apply the law that the Court, that I, give you in charge, to the facts as you find them to be based on the evidence you heard in this courtroom? And if you find the State does not prove the charge beyond a reasonable doubt, can you acquit? But if you find that they do prove it beyond a reasonable doubt, can you convict? That is the question. And what is your answer?

The juror yielded, "Yes," to the trial court's lengthy remarks, which had posed to her at least five separate questions. The court followed up with, "You're telling this Court now that you could make that decision based solely on this evidence?" Confronted with yet another version of the question, the juror responded by simply repeating the court's words, "Based solely on the evidence." And with that response, the court denied the motion made by Ivey's attorney to excuse her for cause, stating, "I have completed my questions." Ivey was thus forced to use a peremptory strike to exclude Juror No. 9 from the jury.

When ruling on a prospective juror's qualifications, the trial court must make a factual determination based on all the circumstances known to it, including, but not limited to, the juror's own statement that she will lay aside any bias.[8] As the dissent quotes from *Walls*, "the judge is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury."[9] The remainder of the quote, which the dissent omits, is that because the judge sits in that unique position, "[a] trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors. . . ."[10]

Before voir dire, jurors are required to take an oath to "give true

---

[8] *Lively v. State*, 262 Ga. 510, 511 (1) (421 SE2d 528) (1992); *Cannon v. State*, 250 Ga. App. 777, 779 (1) (552 SE2d 922) (2001), disapproved on other grounds, *Jackson v. State*, 254 Ga. App. 562, 567 (4) (562 SE2d 847) (2002), aff'd, *Curtis v. State*, 275 Ga. 576 (571 SE2d 376) (2002).

[9] Supra, 250 Ga. App. at 260.

[10] Id.

answers to all questions as may be asked by the court or its authority."[11] OCGA § 15-12-164 (a) mandates that certain qualifying voir dire questions be posed to the jurors in a felony trial: (1) "Have you, for any reason, formed and expressed any opinion in regard to the guilt or innocence of the accused?" (2) "Have you any prejudice or bias resting on your mind either for or against the accused?" and (3) "Is your mind perfectly impartial between the state and the accused?"[12] OCGA § 15-12-164 (c) provides that if a juror's answer to any of these questions renders that juror incompetent, then "[that juror] shall be set aside for cause."

Where a prospective juror, who has been asked whether he or she can be fair and impartial in the case, answers under oath a plain, "No," and provides an explanation for the inability to be fair and impartial, the court should limit further questions to clarification of the answer. Neither the court nor the parties should incessantly interrogate the juror in a manner calculated only to elicit a response contrary to the one originally given. Interrogation for that purpose is nothing more than an effort to justify finding a biased juror qualified.

Here, the court's and prosecutor's lengthy and repeated questioning of Juror No. 9 about laying aside her bias and deciding the case based solely on the evidence was "more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality."[13] During the court's initial questioning of the juror, she answered at least four times that she had already formed an opinion about Ivey's guilt or innocence and that her experience would not permit her to be impartial in this case. She reiterated the same to the prosecutor during his efforts to rehabilitate her. But after being confronted repeatedly with variations of the rehabilitation question, she abandoned her own answers and adopted the court's words. Upon receiving her affirmative response to that question, the court announced that it had completed its inquiry and refused to excuse Juror No. 9 for cause.

A trial court may not rely solely on a prospective juror's extracted statement of impartiality, where, as here, consideration of the entirety of the voir dire reveals a prospective juror with a fixed and definite bias that she was unable to set aside in deciding the case.[14] In accordance with OCGA § 15-12-164 (c) and *Walls*, Juror No.

---

[11] OCGA § 15-12-132.

[12] A fourth question is required in cases where the authorized penalty for the offense involves the life of the accused. OCGA § 15-12-164 (a) (3), (4).

[13] (Citation and punctuation omitted.) *Cannon*, supra, 250 Ga. App. at 780; see also *Walker v. State*, 262 Ga. 694, 695-696 (2) (424 SE2d 782) (1993).

[14] *Cannon*, supra, 250 Ga. App. at 779.

9 should have been excused for cause, and Ivey should not have been forced to use a peremptory strike to remove her.[15]

Attempting to support its conclusion that the trial court did not abuse its discretion in refusing to excuse for cause Juror No. 9, the dissent cites *Thomas v. State*,[16] *Klaub v. State*,[17] *Torres v. State*,[18] and *Brown v. State*,[19] which recognized the principle that a juror who expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service. The dissent also cites *Wardlaw v. State*[20] and *Harris v. State*,[21] which recognized that although a potential juror may have some doubt as to his impartiality, or about his complete freedom from all bias, that alone does not demand as a matter of law that the juror be excused for cause. While those principles remain correct statements of the law and were correctly applied in those cases, they are not controlling in this case, which presents the issue of the improper "rehabilitation" of a biased and partial juror through the use of the "rehabilitation" question, a practice which *Walls* disapproved.

Moreover, both *Harris* and *Brown* were decided before *Walls*. And *Brown* is distinguishable because "[w]hen questioned by the judge, [the prospective juror there] said that he would be willing to try to be objective and that if impaneled he would decide the case without regard to his feelings. . . ."[22] That did not happen here. When Juror No. 9 was initially asked by the court whether she could make a decision regarding Ivey's guilt or innocence based solely on the evidence, she plainly answered, "No." Her answer brought about the subsequent interrogations, and a consideration of the record as a whole shows that her responses exceeded mere "doubt" or "reservation" as to her ability to put aside personal feelings and partiality.[23]

The remaining cases cited by the dissent are also distinguishable from what occurred in *Walls* and in the instant case. In *Torres*, where the defendant was charged with cocaine trafficking, a juror was asked whether he could set aside his thoughts regarding his niece, who was killed by a drug dealer. The juror answered that he "would

---

[15] Whether a defendant uses all of his peremptory strikes plays no role in the evaluation of the harm caused by the refusal to strike an unqualified juror. See *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986).

[16] 257 Ga. App. 350, 351 (2) (571 SE2d 178) (2002).

[17] 255 Ga. App. 40, 47 (3) (564 SE2d 471) (2002).

[18] 253 Ga. App. 318, 320 (2) (558 SE2d 850) (2002).

[19] 243 Ga. App. 632, 633 (1) (534 SE2d 98) (2000).

[20] 257 Ga. App. 611 (571 SE2d 578) (2002).

[21] 178 Ga. App. 735, 736 (1) (344 SE2d 528) (1986).

[22] *Brown*, supra, 243 Ga. App. at 632.

[23] See generally *Menefee v. State*, 270 Ga. 540, 541-542 (2) (512 SE2d 275) (1999).

rather not."[24] After the trial court emphasized that the issue was not whether he wanted to listen to the evidence, but whether he could be impartial and fair, the juror stated that he could do so.[25] In ruling that the trial court had not abused its discretion in refusing to excuse him for cause, we distinguished that case from *Walls*: "This is not a case where the trial court coercively 'rehabilitated' a prospective juror who had expressed well-founded doubts about being able to serve impartially. . . ."[26] We similarly distinguished *Wardlaw* from *Walls*.[27] And in *Klaub*, although the juror equivocated in some of her responses during voir dire, she had expressed no opinion at all about the guilt or innocence of the defendant and was not asked any questions regarding her impartiality with respect to the defendant and the charged crimes.[28] We determined that *Klaub* was "not a case like *Walls*."[29] Finally, while we ruled in *Thomas* that the trial court had not abused its discretion in refusing to excuse for cause the challenged jurors, in that case, "[n]either juror had formed an opinion as to [the defendant's] guilt or innocence, nor had they pre-judged the evidence."[30] And this court distinguished that case from *Walls*.[31]

The determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial court, and absent a manifest abuse of this discretion, we cannot require a new trial.[32] Because the record as a whole fails to support the court's finding that Juror No. 9 could put aside her bias to render an impartial verdict based solely on the evidence presented at trial, we find that the court manifestly abused its discretion.[33] While the dissent expresses concerns of a diminished jury pool and "the already onerous task of evaluating juror's responses," these concerns cannot trump an accused's right to a full panel of qualified jurors, who are not subject to being excused for cause, to which to direct his peremptory strikes.[34] The selection of an impartial jury is the "cornerstone of the fairness of trial by jury," and, in this process, "peremptory strikes are invaluable."[35] Since Ivey was denied a full panel of qualified jurors, his conviction must be reversed.[36]

---

[24] *Torres*, supra, 253 Ga. App. at 320.

[25] Id.

[26] (Citations omitted.) Id.

[27] *Wardlaw*, supra, 257 Ga. App. at 614.

[28] *Klaub*, supra, 255 Ga. App. at 48.

[29] Id.

[30] *Thomas*, supra, 257 Ga. App. at 351.

[31] Id. at 351, n. 7.

[32] See *Menefee*, supra, 270 Ga. at 542; *Cannon*, supra, 250 Ga. App. at 780.

[33] See *Cannon*, supra, 250 Ga. App. at 780.

[34] *Cannon*, supra, 250 Ga. App. at 781.

[35] *Bradham v. State*, 243 Ga. 638, 639 (3) (256 SE2d 331) (1979); *Cannon*, supra, 250 Ga. App. at 780-781.

[36] See *Cannon*, supra, 250 Ga. App. at 781.

3. We need not address Ivey's contention of juror misconduct.

*Judgment reversed. Blackburn, C. J., Johnson, P. J., Smith, P. J., and Miller, J., concur. Andrews, P. J., and Mikell, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because I do not believe the trial judge manifestly abused his discretion in not excusing for cause juror Konkol, I respectfully dissent.

In response to the first statutory qualification question asked by the court pursuant to OCGA § 15-12-164 (a), i.e., had the jurors "formed and expressed any opinion in regard to the guilt or innocence of the accused," Konkol responded that "I may be prejudiced because I am a victim of an armed robbery." That she had not formed or expressed any opinion in regard to Ivey's guilt or innocence, the crux of the inquiry, was affirmed when Konkol responded negatively when asked if she had formed and expressed any opinion as to Ivey's guilt or innocence of "this particular offense." Konkol responded, "I don't believe so," to the court's asking if she could base her opinion on evidence presented in the courtroom, not on something that took place outside it. Konkol answered affirmatively when asked if, based on the fact that she was a victim, she would be "pre-committed." Asked again by the court if she could limit herself to the evidence presented in the courtroom, Konkol said no.

The court completed questioning the jurors as a group and then allowed the parties to question Konkol. The State asked if her robbery would affect her ability to decide Ivey's guilt or innocence. She replied, "[i]t could. After I hear evidence, I mean, it could." Konkol then acknowledged that she did not know anything about Ivey's case and would want to listen to all the evidence. She then said she would try to wait until she heard all the evidence to decide if he were guilty or not and that she would give Ivey the presumption of innocence.

The court then asked Konkol to explain what appeared to be conflicting answers regarding her ability to fairly consider Ivey's case. In response, Konkol stated, "[w]hen you asked me if I could give an impartial, I said I would try. He [the prosecutor] asked it differently and said could I, after hearing the evidence. To be fair, yes, I can make a decision. Whether or not it would make a difference, I don't know. But at this point, because of the trauma that I went through, it still affects me." The court then asked her if she were picked as a member of the panel,

would you be able to make a decision based solely on the evidence you hear in this courtroom and any documents or exhibits admitted into evidence by the Court as to determining what the facts are in this case and apply the law that the

Court . . . give[s] you in [the] charge, to the facts as you find them to be based on the evidence you heard in this courtroom? And if you find the State does not prove the charge beyond a reasonable doubt, can you acquit? But if you find that they do prove it beyond a reasonable doubt, can you convict? That is the question. And what is your answer?

Konkol answered "Yes" and said she could make the decision based solely on the evidence.

The trial judge "is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury." *Walls v. Kim*, 250 Ga. App. 259, 260 (549 SE2d 797) (2001). To fulfill this duty, the trial court is given broad discretion to evaluate and rule upon a potential juror's impartiality, based upon "the ordinary general rules of human experience." (Citation and punctuation omitted.) *Daniel v. Bi-Lo*, 178 Ga. App. 849, 850 (1) (344 SE2d 707) (1986). A trial court's decision on this issue may only be reversed upon a finding of "manifest abuse" of this discretion. *Speed v. State*, 270 Ga. 688, 691 (7) (512 SE2d 896) (1999).

Relying on *Parisie v. State*, 178 Ga. App. 857, 858 (2) (344 SE2d 727) (1986), Ivey contends that the trial court manifestly abused his discretion in failing to excuse Konkol for cause. In *Parisie*, supra, the juror stated that he was not impartial between the State and the accused; could not judge the case fairly; and would be influenced by previous events, otherwise unspecified, in his life. There is no indication that this juror equivocated about his impartiality, as Konkol did. Further, the concerns expressed by Konkol did not relate specifically to Ivey, but to the crime of robbery, of which she had been a victim. As concluded in *Brown v. State*, 243 Ga. App. 632-633 (1) (534 SE2d 98) (2000),

Unless the juror holds an *opinion regarding the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside* and decide the case based on the evidence and court instructions, a court need not excuse the juror for cause. *A potential juror's doubts as to his or her own impartiality or reservations about his or her ability to set aside personal experiences* do not require the court to strike the juror, as the judge is uniquely positioned to observe the juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict. A juror who expresses a willingness to "try" to be objective and whose bias arises from feelings about the particular crime as

opposed to feelings about the accused may be eligible for service.

(Footnotes omitted; emphasis supplied.) Id. See also *Harris v. State*, 178 Ga. App. 735, 736 (1) (344 SE2d 528) (1986).

Juror Konkol's situation is similar to that in *Torres v. State*, 253 Ga. App. 318, 320 (2) (558 SE2d 850) (2002), where, in a trafficking in cocaine case, a juror equivocated concerning his ability to set aside the fact that his niece had been murdered by her boyfriend, a drug dealer, but then said he could sit fairly and impartially. There, this Court found that the trial court did not abuse its discretion in refusing to remove the juror.

Several recent cases authored by and concurred in by the judges who voted in the majority in *Walls v. Kim*,[37] supra, support this conclusion, as does a consideration of the factual context of *Walls*. In that civil medical malpractice case, a nurse who knew and worked with the defendant Dr. Kim was in the jury pool and acknowledged this relationship. The trial court, nonetheless, refused the plaintiff's challenge for cause. As reiterated by the Supreme Court in affirming this Court's judgment finding this inappropriate,

> when a prospective juror has a *relationship with a party to the case* that is either close or subordinate, or one that suggests bias, the trial court must do more than "rehabilitate" the juror through the use of any talismanic question. *The court is statutorily bound to conduct voir dire adequate to the situation*, whether by questions of its own or through those asked by counsel. . . . Though we do not see this interest [(professional relationship)] as necessarily or categorically requiring her exclusion from the jury, *we do see this interest as requiring the trial court to conduct voir dire of sufficient scope and depth to ascertain any partiality*.

(Emphasis supplied.) *Kim v. Walls*, 275 Ga. 177, 178-179 (563 SE2d 847) (2002). See also *Powell v. Amin*, 256 Ga. App. 757 (569 SE2d 582) (2002) (pharmacist who filled defendant doctor's prescriptions and was asked only the "talismanic question" was member of jury pool and this Court concluded there had been insufficient voir dire regarding the relationship).

The Supreme Court further noted that "[o]ur holding today in no way modifies our adherence to the fundamental principle that '(t)he

---

[37] The opinion was authored by Presiding Judge Johnson, concurred in by Presiding Judge Pope, Presiding Judge Smith, Judge Barnes, Judge Ellington, and Judge Phipps and dissented to by Judge Ruffin.

law presumes that potential jurors are impartial.' *Cohen* [*v. Baxter*, 267 Ga. 422, 424 (2) (479 SE2d 746) (1997)]." *Kim v. Walls*, supra at 179. Additionally, the Supreme Court found that "to the extent that *Walls*, supra, can be read to advocate such a per se rule [exclusion of an entire class of jurors who have an employment relationship with a party to the lawsuit], it is expressly disapproved." Id.

In *Wardlaw v. State*,[38] 257 Ga. App. 611 (571 SE2d 578) (2002), this Court addressed equivocation by two potential jurors regarding family members' prior experience with violent crime. Wardlaw was charged with hijacking a motor vehicle, armed robbery, and possession of a firearm by a felon. Juror Eggleston's mother had been mugged four years earlier and badly injured, and two years prior to that, her sister had been mugged in an attempt to hijack her car. Both incidents occurred in Miami, and neither resulted in arrest or conviction. Asked by the State whether these incidents would affect her judgment in Wardlaw's case, she responded, "I have no idea. I'd have to see how the trial played out." In response to defense counsel's questions, Juror Eggleston stated that she did not know if it would affect her ability to serve until she knew the specifics and that everyone deserved a fair trial and she would try to be impartial. The next morning, after speaking with her sister, she said she felt "probably more" that she could not be fair and impartial, although she would try. In explaining her answers, she stated that "I find myself relating to my mother's incidents more than I would on any other kind of case. And so knowing that, I would say that I would really be very consciously trying not to make that an issue. And that's — I mean, you know, I can't say, yes, I'm going to say these boys are guilty when I don't know any of the circumstances."

The trial court then asked Eggleston if she understood that the incidents involving her family were separate from the issue at hand and asked if she could listen to the evidence and the charge fairly and impartially, to which she responded affirmatively.

Juror Hall's son had been attacked with a knife and left with a nasty scar. She said she still got very emotional about the incident and it might "give her pause" if she were chosen. Nevertheless, she said she could be fair and impartial.

This Court upheld the trial court's denial of the motion to excuse these two jurors for cause, noting that

> [a] prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. Nor is excusal required when a potential

---

[38] Authored by Senior Appellate Judge Pope, concurred in by Presiding Judge Ruffin, and concurred specially in by Judge Barnes.

juror expresses reservations about his or her ability to put aside personal experiences. A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference. (Citations and punctuation omitted.) *Upshaw v. State,* 249 Ga. App. 741, 743 (1) (549 SE2d 526) (2001).

*Wardlaw v. State,* supra at 614.

In *Thomas v. State,*[39] 257 Ga. App. 350 (571 SE2d 178) (2002), Thomas was charged with aggravated assault, kidnapping, and armed robbery.[40] He sought to excuse for cause two jurors because both jurors stated that prior "personal experiences with violence led them to doubt their ability to be impartial as to the offense — *if the facts as alleged were proved by the State.* Neither juror had formed an opinion as to Thomas' guilt or innocence, nor had they pre-judged the evidence." (Emphasis in original.) Id. at 351 (2).

Noting that trial courts are not obligated to strike for cause every juror who expresses doubts about his or her impartiality or reservations about their ability to set aside personal experiences, this Court found that

> [t]here is a legal difference between (a) a potential juror who, because of life experiences, expresses doubt that he or she can be impartial *if evidence* triggers those experiences, and (b) a juror who, because of life experiences, cannot listen to the evidence before forming a judgment. While the former category may or may not merit a peremptory strike, the latter category does merit a strike for cause. Juror Beck's and Juror Henderson's concerns about their impartiality fall into the former category. "Although both expressed some reservations about their ability to put aside their experiences, neither suggested that he or she had already formed an opinion as to (Thomas') guilt or innocence." In that regard, (f)or a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. . . . A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in

---

[39] Authored by Judge Eldridge and concurred in by Presiding Judge Smith and Judge Ellington.

[40] He was acquitted of the latter two offenses and convicted of aggravated assault.

the trial court's province, and those findings are to be given deference. Nothing in the juror(s)' responses compels a finding that (they) had formed *an opinion of (Thomas') guilt or innocence* that was so fixed and definite that (they) would be unable to set the opinion aside, or that (they) would be unable to decide the case based upon the court's charge and upon the evidence. It was not an abuse of discretion to refuse to excuse the juror(s).

(Footnotes omitted; emphasis in original.) *Thomas v. State*, supra at 351-352.

In *Klaub v. State*,[41] 255 Ga. App. 40, 47 (3) (564 SE2d 471) (2002), a juror in a vehicular homicide case was asked if she knew any reason she could not be fair and impartial and stated, "I don't know. It's hard to say, to be honest with you. Fair and impartial? I suppose I could be fair. I have to listen to the evidence; not a hundred percent sure, though; gut feelings." Pressed further by defense counsel, the juror referred to her sister's experience "that she had and having a hard time physically and with the court system and the insurance company and things of that nature, I don't want to say that will happen, but that's in the back of my mind. Gut feelings." Id.

Pressed by the trial court about her reference to the court system, the juror said, "more so with the insurance company." *Klaub v. State*, supra at 48. She then indicated she would not hold this experience against defendant, but said it "might affect my decision somehow. I mean, I don't know. I mean, I think I could be — I couldn't be totally fair and impartial. Let's put it that way." Id.

As noted by this Court, the juror's equivocation did not go to a clear partiality for one party or the other, but other events in her life, and the "issue here is not whether we would have granted the motion to strike, but whether the trial court's failure to do so was a manifest abuse of discretion." *Klaub v. State*, supra at 49.

Similarly, in Ivey's case, the only expression of doubt by Juror Konkol was based, not on her prejudging anything in Ivey's case, but on her life experience as the victim of a crime.

As indicated by these cases, a juror's honesty and forthrightness about prior life experiences does not, and in my opinion, should not, without more, preclude that juror from service. If allowed to do so, the pool of available jurors will be greatly diminished. Nor do I believe that this Court, on a cold record, should routinely overturn the trial court's evaluation of the credibility and demeanor of the

---

[41] Authored by Presiding Judge Pope and, as to Division 3, concurred in fully by Judge Eldridge, Judge Miller, Judge Ellington, and Judge Mikell and concurred in specially by Chief Judge Blackburn and Presiding Judge Andrews.

juror. To do so leaves trial judges hamstrung by hindsight. What is mandated by *Kim v. Walls*, supra, is voir dire of "sufficient scope and depth to ascertain any partiality." Id. at 179. In this case, however, solely on the cold record, the majority has determined that the trial court went too far in attempting to make this determination. What is the limit to which the trial court may appropriately go? I fear the majority, particularly in light of the similar factual situations in *Wardlaw*, supra; *Thomas*, supra; and *Klaub*, supra, makes more difficult for the trial courts the already onerous task of evaluating jurors' responses.

Therefore, I respectfully dissent.

I am authorized to state that Judge Mikell joins in this dissent.

DECIDED NOVEMBER 26, 2002.

*Patrick C. Kaufman*, for appellant.

*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.