## A04A0819. NELSON v. THE STATE.
### (603 SE2d 691)

MIKELL, Judge.

A jury convicted Clyde Nelson of three counts of entering an automobile with intent to commit a theft. The court sentenced him to five years in confinement on each count to be served concurrently. Nelson appeals the denial of his motion for new trial, arguing that the trial court erred in refusing to strike a prospective juror for cause and in denying his motion for directed verdict because there was a fatal variance between the allegations of the indictment and the proof at trial. Finding no error, we affirm.

1. Nelson contends that the trial court erred in refusing to excuse for cause a potential juror who expressed doubts about her ability to be fair and impartial.

> Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. The decision to strike a juror for cause lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion.

(Citation omitted.) Torres v. State, 253 Ga. App. 318, 319-320 (2) (558 SE2d 850) (2002). See also Brown v. State, 243 Ga. App. 632-633 (1) (534 SE2d 98) (2000) ("[u]nless the juror holds an opinion regarding the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based on the evidence and court instructions, a court need not excuse the juror for cause.") (footnote omitted). In this case, the following exchange took place during voir dire between defense counsel and the prospective juror:

[Counsel]: Okay. If you were chosen as a juror, do you think you could be a fair and impartial juror for Clyde Nelson?

[The Juror]: I don't know how to answer that question because we just went through the if I think he's guilty, then I'll go that way. If I think he's not guilty, I would go that way. So going in I have no preconceived notion of whether he's guilty or not. But with the evidence, I might become very biased by the end of the trial. And that's what you're supposed to do, isn't it, supposed to draw a conclusion? All right. So you've got to quit being neutral at some point.

[Counsel]: Is it possible to maintain neutrality and just reach a decision?

[The Juror]: You mean like just sit here like a blank slate and have no opinions and no thoughts and not process any information until we go to the jury room?

[Counsel]: Exactly.

[The Juror]: No.

[Counsel]: You can't do that?

[The Juror]: No. Nobody can.

[Counsel]: Even if the judge told you you can't talk to anyone, you're not supposed to do anything until all of the evidence is in, you would not be able to do that?

[The Juror]: You cannot talk to somebody, that's true, you can do that. But —

[Counsel]: No, no. How do you feel about it? I think I know what you can and can't do. How do you feel about that?

[The Juror]: Well, I think he has to say that; but that's like if there's an objection and the judge says disregard that statement, well, you know, you can't rewind the recorder and erase it. It's still there. You can know the judge said disregard that statement, but you can't unhear it. So at some point in the process of listening to information, you're going to begin to formulate an opinion of what appears to be true and not true. I mean even if I am reading a [legal thriller] novel, I start guessing how it's going to come out at the end. I don't wait until the last page to find out or start putting the pieces together. And I think you are going to do that in the jury room. You may not be allowed to talk to the other people about it or to debate the issues, but you start to form an opinion.

[Counsel]: Have you started to form an opinion already?

[The Juror]: No, I don't think so.

[Counsel]: When would you start forming an opinion?

[The Juror]: As soon as information starts being processed.

[Counsel]: Okay. Processed?

[The Juror]: Well, if you give information, I'm hearing it, I'm processing it.

[Counsel]: So if the state gets to go first, then they would get the first shot at you?

[The Juror]: It seems reasonable to me.

[Counsel]: Okay. And you would start processing that and start forming an opinion immediately?

[The Juror]: I think, yes.

[Counsel]: Okay.

[The Juror]: But if he gets to go first, you get to go last; is that right?

[Counsel]: I really can't answer questions like that.

[The Juror]: So that means you get the last — assuming that would be true, then you would get the last opportunity to influence my decision.

[Counsel]: But if you have already made up your mind.

[The Juror]: Then is your job done? Then it's your job to unmake it.

[Counsel]: If it's my job to unmake it, doesn't that go against what we talked about earlier, it's the state's burden of proof and I can just stand here and look like I look?

After a bench conference, defense counsel continued,

[Counsel]: Just so I understand, if chosen, you could be a fair and impartial juror?

[The Juror]: Uh-huh. But I'm not promising to wait until the end to start forming an opinion.

After the trial court denied his motion to strike the juror, Nelson used one of his peremptory strikes to remove the juror.

Contrary to Nelson's contention, the prospective juror stated that she had no preconceived notion as to Nelson's guilt, that she would be fair and impartial, and that she would abide by the court's charge. The juror never expressed an opinion about Nelson's guilt or innocence; she merely stated that her opinion would begin forming as she processed the evidence. Because there was no indication that the juror was so biased that she could not render an impartial verdict based on the evidence, the trial court did not abuse its discretion in refusing to remove her for cause. See, e.g., *Wardlaw v. State*, 257 Ga. App. 611, 614 (571 SE2d 578) (2002); *Thomas v. State*, 257 Ga. App. 350, 352 (2) (571 SE2d 178) (2002); *Klaub v. State*, 255 Ga. App. 40, 47-49 (3) (564 SE2d 471) (2002); *Torres*, supra; *Evans v. State*, 210 Ga. App. 804, 805 (437 SE2d 495) (1993); *Harris v. State*, 178 Ga. App.

735, 737 (1) (344 SE2d 528) (1986). But see *Ivey v. State*, 258 Ga. App. 587, 588-593 (2) (574 SE2d 663) (2002).

2. Nelson argues that the trial court erred in denying his motion for a directed verdict because a fatal variance existed between the allegations in the indictment and the evidence presented at trial. Specifically, he urges that neither the owners of the vehicles nor the model year of the vehicles, as alleged in the indictment, were proven by the evidence.

The indictment charged Nelson with, "[Count 1,] unlawfully [entering] . . . a 1993 Ford Explorer . . . the property of Beatriz Ortiz Venegas; [Count 2,] unlawfully [entering] . . . a 1992 Ford Explorer . . . the property of Larry Scarlett; [and Count 3,] unlawfully [entering] . . . a 1998 Jeep Wrangler . . . the property of Michael Johnson."

At trial, Officer Mulkey of the City of Atlanta Police Department testified that during an undercover operation at a Buckhead parking lot on January 27, 2002, he observed Nelson drive up in a yellow Geo Metro convertible and park in a handicap spot. Nelson then proceeded to break into a black Jeep Wrangler. Nelson removed something from the Jeep and placed the item into an accomplice's vehicle. Officer Mulkey then observed Nelson and his accomplice break into a beige Ford Explorer and a green Ford Explorer. When Officer Mulkey called for assistance from other officers, who arrived on the scene with their lights and sirens activated, Nelson began running. Officer Mulkey arrested Nelson. Officers recovered two screwdrivers, one of which was large with a red handle, both of which were dropped when the two men began running, and a pair of wire cutters from Nelson's person. Officers also found stereo equipment, radios and front-face receivers in the accomplice's vehicle. Nelson denied the charges but confirmed that on the evening of January 27, 2002, he parked his mother's yellow Geo in the Buckhead parking lot.

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

*DePalma v. State*, 225 Ga. 465, 469-470 (3) (169 SE2d 801) (1969), citing *Berger v. United States*, 295 U. S. 78 (55 SC 629, 79 LE 1314) (1935). "A variance is not fatal if the accused is definitely informed as to the charges against him and is protected against another prosecution for the same offense for the present trend of case law is away from the overly technical application of the fatal variance rule." (Citations

and punctuation omitted.) *Shackelford v. State*, 179 Ga. App. 595, 597 (347 SE2d 346) (1986). Accord *Edward v. State*, 261 Ga. App. 57, 59 (2) (581 SE2d 691) (2003).

In this case, the variance between the indictment and the evidence is not fatal. The evidence showed that on January 27, 2002, Nelson arrived at the parking lot in his mother's Geo, and, without permission, entered a Jeep Wrangler and two Ford Explorers, and took items from two of the vehicles. The state proved that the three vehicles were entered without the authority of the lawful owners and the indictment gave sufficient notice of the property which was the subject of the prosecution. See, e.g., *Greeson v. State*, 253 Ga. App. 161, 165 (4) (558 SE2d 749) (2002) ("[t]he technical quality of an owner's interest need not be pursued in a prosecution for theft by receiving, because ownership is important only in the sense of whether the goods were owned by someone other than the accused.") (footnote omitted); *Holbrook v. State*, 129 Ga. App. 129 (2) (199 SE2d 105) (1973) ("[f]ailure to prove the serial number of the stolen vehicle as alleged in the indictment, was not a fatal variance between the allegation and the proof where there was other identification sufficient to identify the vehicle described in the indictment and in the proof as being one and the same"). Compare *Ross v. State*, 195 Ga. App. 624-625 (1) (b) (394 SE2d 418) (1990) (fatal variance existed where indictment averred that defendant committed aggravated sodomy "by putting his mouth to the sex organ of the alleged victim," but victim testified that defendant forced her to engage in anal intercourse and perform oral sex upon him); *Cantrell v. State*, 162 Ga. App. 42 (290 SE2d 140) (1982) (fatal variance existed where indictment averred that defendant "did . . . knowingly forge the name of Eula M. Chandel" but state's handwriting expert was unable to identify Chandel's signature as having been written by defendant). The trial court did not err in denying Nelson's motion for a directed verdict.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 12, 2004.

*Maurice Brown*, for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.