## A02A0220. POWELL v. AMIN.
(569 SE2d 582)

POPE, Presiding Judge.

Venus Arnold Powell filed a medical malpractice action against Dr. Mahendra Amin, alleging that he was negligent in clamping her ureter during a hysterectomy, resulting in significant injuries that required two additional surgeries to repair. After two days of testimony, the jury returned a defense verdict. Powell appeals following the entry of judgment on that verdict. We reverse.

1. Powell argues that the trial court erred in refusing to disqualify juror Jimmy Atkinson. Atkinson is a pharmacist who said that he knew Amin through prescription call-ins to his pharmacy. Powell's attorney asked him if, in view of "the close relationship that a pharmacist has with the medical community," he could "be fair and impartial to both sides realizing that your livelihood depends to a certain extent on the medical profession?" He responded, "I guess. I don't know. I could," although he acknowledged that it "probably" would be difficult for him. Atkinson also stated that if he were Powell, he probably would not want himself sitting as a juror on the case. Powell's counsel then moved to disqualify Atkinson for cause.

In response, the trial court informed the jury that their responsibility, if selected, was to base their verdict solely and exclusively upon the evidence and nothing else. He then asked Atkinson, "Does the fact that you practice pharmacy and fill prescriptions for the — which have been prescribed by this Defendant, will that prevent you from basing your verdict strictly and exclusively upon the evidence?" Atkinson replied, "No."

The Supreme Court of Georgia recently clarified the duty of a trial judge in cases of juror disqualification, by noting that the judge must ask more than a "talismanic question" to evaluate the juror, but must also investigate through more detailed voir dire:

> [W]hen a prospective juror has a relationship with a party to the case that is either close or subordinate, or one that suggests bias, the trial court must do more than "rehabilitate" the juror through the use of any talismanic question. The court is statutorily bound to conduct voir dire adequate to the situation, whether by questions of its own or through those asked by counsel.

*Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002). In that case, the Supreme Court upheld this Court's determination that the trial court had manifestly abused its discretion in refusing to disqualify a juror in a medical malpractice case, where the juror worked as a nurse alongside the defendant doctor in a local emergency room.[1]

---

[1] This Court's opinion stated:
Many judges on this court have served as trial judges and wholeheartedly agree with the principle that trial judges must have significant discretion in deciding whether to excuse jurors for cause. Just as wholeheartedly, we disagree with the way that the "rehabilitation" question has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors. Especially when the better practice is for judges simply to use their discretion to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call.
*Walls v. Kim*, 250 Ga. App. 259-260 (549 SE2d 797) (2001).

Here, Atkinson made it clear that he derived a portion of his income from prescription referrals from Amin's office and as a result he was reluctant to serve on the jury. But in response, the trial judge only asked the "talismanic question" of whether he thought he could base his decision solely and exclusively upon the evidence. We find that this response was inadequate. Although Atkinson's relationship with Amin did not "necessarily or categorically requir[e] [his] exclusion from the jury," the relationship did require "the trial court to conduct voir dire of sufficient scope and depth to ascertain any partiality." *Kim v. Walls*, 275 Ga. at 179.

Accordingly, we hold that the trial court abused its discretion in qualifying this juror without conducting further voir dire. Therefore, the judgment must be reversed and the case remanded for a new trial.

2. Powell also asserts that the trial court erred in failing to disqualify Anna Burch from the jury panel. During voir dire, Burch revealed that she was Amin's patient, and that he had delivered her children. Powell's attorney then asked her whether she could be fair and impartial given her doctor-patient relationship. She replied, "I could be fair; but, I mean, it's going to be hard for me."

At the close of voir dire, Powell's attorney moved to disqualify Burch on the ground of her current doctor-patient relationship with Amin. Amin's attorney argued that the law in Georgia was that a doctor-patient relationship does not disqualify a juror. Powell's attorney countered that it was within the judge's discretion to disqualify Burch. The trial court denied the disqualification request, stating, "I'm going to leave that to a future appellate decision. I'm going to follow the law."

Powell asserts that this statement indicates that the trial judge never understood that he had discretion in the matter, but rather believed that he was bound by law not to excuse a juror on the basis of a doctor-patient relationship. But our reading of the colloquy does not support this interpretation. When Powell's attorney first raised the challenge to Burch, the trial court stated that the issue was not simply the existence of the doctor-patient relationship, but whether the juror could be fair and impartial, and he offered to allow the attorney further voir dire on the issue. The attorney declined.

These actions demonstrate that the trial judge correctly understood the law and his discretion in the matter. Our Supreme Court has refused to establish a per se rule of disqualification for jurors who were current patients of defendant doctors in medical malpractice actions, but rather left the ruling up to the discretion of the trial court. *Cohen v. Baxter*, 267 Ga. 422, 423 (1) (479 SE2d 746) (1997).

Nor do we find any manifest abuse in the trial court's exercise of discretion in connection with Burch's disqualification. In *Kim v.*

*Walls*, the Supreme Court based its decision, in part, on the trial court's failure to allow the plaintiff's counsel to fully question the juror after she said that her relationship with the doctor would "probably" affect her view of who should prevail and that she did not view the parties as being on an equal footing: "Because the trial court failed to allow plaintiff's counsel to develop competent evidence as to bias as required by statute, and itself conducted only a cursory, inadequate rehabilitation of the juror, we hold that the court abused its broad discretion in qualifying the juror. [Cit.]" 275 Ga. at 179.

Here, in contrast, the trial court was willing to allow Powell's attorney to conduct further voir dire to establish the basis for his objection, but the attorney declined. He indicated that he had already questioned her. But a review of his prior voir dire shows that the attorney did little more than ask the "talismanic question" of juror Burch. He made no effort, for example, to question her on the length of her doctor-patient relationship with Amin, the frequency of her contact, the age of her children or any other matters that could have provided a factual basis for his argument that she should be excused for cause. Although the concurrence implies that Powell's counsel was merely given the opportunity to raise the "talismanic question" for a fourth time, the trial court, in fact, placed no limits on the voir dire. Thus, it was the attorney's actions, not the trial judge's, that limited the voir dire of this juror. Under these circumstances, we cannot say that the trial court abused its discretion.

We note that Burch also told counsel that she worked in the same hospital as Amin and had regular contact with him and his patients. And further voir dire questioning revealed that she had gone to high school with one of Amin's attorneys and had used him personally as a lawyer. She stated, however, that these relationships would not affect her ability to be fair and impartial, although it would be hard and that she would "try [her] best." Because Powell's counsel moved to disqualify only upon the ground of the doctor-patient relationship we cannot address the issue of whether disqualification should have been allowed upon these other grounds or upon a combination of all the grounds. See *Green v. Wilcox*, 206 Ga. App. 192 (424 SE2d 801) (1992). In this case the voir dire was directed at the jury panel as a whole, with various jurors responding depending upon the questions asked. Under such circumstances, it is the responsibility of counsel to determine which jurors may have multiple grounds upon which to base disqualification and to bring those grounds to the attention of the judge.

3. Powell next asserts that the trial court erred in admitting into evidence the consent form she signed prior to surgery. She asserts that because there was no issue as to whether she had consented to the surgery and because consent cannot be a defense to malpractice,

there was no legitimate basis for admitting the form into evidence.

"Admission of evidence is committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Citation and punctuation omitted.) *Chambers v. Gwinnett Community Hosp.*, 253 Ga. App. 25, 26 (1) (557 SE2d 412) (2001).

Powell moved in limine to exclude the consent form from evidence, and the trial court granted the motion, acknowledging Powell's concern that the jury might improperly view the form as an assumption of the risk of the surgery. Nevertheless, the trial court noted that the document could be admitted for some other purpose depending upon the testimony. In particular, the court noted that the form could be admitted if Powell denied that she was informed of any risk as required by the informed consent laws. OCGA § 31-9-1 et seq.

During later cross-examination, Amin's counsel asked if, before the hysterectomy, Amin's office had explained that complications could arise during surgery. Powell replied, "No, sir." The trial court then allowed Amin's attorney to use the form, over objection, to rebut Powell's denial, but cautioned the attorney that the court "would not tolerate any argument on behalf of the Defendants that this excuses liability." Powell's counsel asked for limiting instructions. The trial court agreed but gave no limiting instructions at that time.

When cross-examination resumed, Powell again stated that Amin's office had not informed her that there could be complications during the course of the surgery. In response, Amin's attorney read pertinent portions of the consent form and obtained Powell's confirmation that she had signed the document. Powell's counsel did not reiterate the request for limiting instructions at that time.

The issue next arose during the closing argument by Amin's attorney when he read the risks listed in the consent form and stated, "That's in that document for a reason, Ladies and Gentlemen, because it happens." Powell's counsel objected, and at that point the trial court instructed the jury as follows:

> Members of the Jury, this portion of [Amin's attorney's] argument regarding the consent which has been admitted into evidence requires me to give you this instruction. Before performing a proposed surgery, the law requires a physician to obtain from his patient an informed consent to the surgery which the physician proposes to perform upon the patient. That informed consent was obtained by the Defendant in this case and has been admitted into evidence in this case. I instruct you, however, that such informed consent is not a defense to medical malpractice by a physician and does not relieve a physician or surgeon from the duty to exercise

that degree of care or skill ordinarily employed by the profession generally under similar conditions and like surrounding circumstances.

Amin's attorney then proceeded with his argument, stating again, without objection, "This information is in here because it's a risk and because it happens."

Later, after the final charge to the jury, Powell's attorney objected to the trial court's limiting instruction on the ground that it was insufficient to limit the use of the consent form to a proper purpose. Powell explains this objection on appeal by noting that while the trial court's instruction told the jury that the form could not be used to negate liability, it did not tell them the purpose for which the form could be used.

We find no abuse of discretion. Even though the consent form was not relevant to the issue of liability in the case, it was admissible to impeach Powell on her testimony that she had not been informed that there was any risk of complications connected to the surgery. See *Austin v. Kaufman*, 203 Ga. App. 704, 708 (4) (417 SE2d 660) (1992) (evidence should be admitted for any legitimate purpose even if it is inadmissible for another purpose). And the trial court's limiting instruction made it clear that the consent form did not affect the issue of Amin's liability. While the better practice would certainly be to explain to the jury the limited purpose for which the evidence was being admitted, we cannot say that the instruction was harmful error, especially in light of the trial court's later instructions on negligence and malpractice.

4. Powell further argues that the trial court erred in failing to give her requested charge stating "that a doctor must exercise the same degree of care whether he practices in a small town or a large city." She asserts that without the charge the jury could have somehow assumed that different standards applied to their local doctors than to other doctors. We disagree.

The trial court charged the jury that a doctor "must bring to the exercise of his profession a reasonable degree of care and skill." The court further charged the jury that the appropriate standard, "when applied to the facts and circumstances of any particular case, must be such degree of care and skill as under similar circumstances and like surrounding circumstances is ordinarily employed by the profession generally." This charge tracked the pattern jury instructions and was a complete and correct statement of the appropriate standard of care. See Suggested Pattern Jury Instructions, Vol. I: Civil Cases (3rd ed. rev. 1996), pp. 251-252. The court's instructions also covered

the principle addressed by the requested charge, and therefore no additional instruction was required:

> It is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case. All that is necessary, provided the requested charge accurately states the relevant principles of law, is that these principles be fairly given to the jury in the general charge. When it can be determined that the charge actually given conveys correctly the intent of the law and is so framed as to be applied with understanding by the jury to the fact situation, denial of a request for a specific charge is not reversible error.

(Citation and punctuation omitted.) *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111, 116 (3) (460 SE2d 800) (1995). Accordingly, we find no error.

While this Court approved the use of a similar charge in *Packer v. Gill*, 193 Ga. App. 388, 390 (3) (388 SE2d 338) (1989), that case is distinguishable. There, the defendant doctor objected to the charge as incomplete, asserting that the trial court had never defined the parameters for the appropriate standard of care. Because we found that the full charge correctly set forth the required parameters, we found no error. Id. *Packer* did not hold, as Powell suggests, that the charge must be given in every case of malpractice in a small community.

*Judgment reversed. Ruffin, J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

I fully concur in the result in this case, and in Divisions 1, 3, and 4. I write separately because the trial court should have excused juror Burch for cause. Unlike the situation in *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002), in which the trial court would not allow the plaintiff's counsel to further question a juror who was a nurse working with the defendant doctor, the trial court in this case merely offered Powell the opportunity to ask for the fourth time whether this juror, a current patient of the defendant's, could be fair. Since the juror had already answered that question three times regarding her various relationships with the doctor, Powell's decision not to ask yet again does not constitute failure to conduct further voir dire to establish the basis for her objection.

In addition to the fact that the defendant in this case delivered the juror's children, she was a current patient of the defendant's. Powell moved to strike her for cause because she was a current

patient and submitted that "a current patient of a doctor cannot be fair and impartial in a case like this." The trial court pointed out that the issue was not the doctor-patient relationship itself, but whether the juror could be fair and impartial without being influenced by the fact that she was the defendant's patient. The trial court then offered Powell the opportunity to question the juror again on that issue, to which Powell replied, "I think we've already asked [her] that. . . ." The trial court responded that Powell could ask again, to which she replied, "I think we've already asked them one [time]."

Defense counsel pointed out that the relationship itself did not disqualify the juror, and Powell noted that the decision was within the court's discretion. The trial court replied, "I'm going to leave that for a future appellate decision. I'm going to follow the law," and did not excuse the juror for cause.

The juror's earlier responses to whether she could be fair are mostly equivocal at best. Upon learning that the juror was a current patient of the defendant's, Powell asked, "Ms. Burch, realizing all these relationships that you've told us about previously and the fact that you are currently a patient, do you feel that you could be fair and impartial in this case?" The juror replied, "All I can say is I'll try my best to." This response came after Powell had the following exchange with the juror, who was a nurse at the hospital perinatal department where she had contact with the defendant:

> POWELL: Realizing that relationship and that you're going to be seeing Dr. Amin after this is over with, would your relationship with him affect your ability to be fair and impartial in this case?
> JUROR: I. . . .
> POWELL: Would you feel uncomfortable sitting on the case?
> JUROR: (Nods head up and down.)
> POWELL: Would you rather not sit on the case?
> JUROR: Yes, sir.
> POWELL: I'm going to ask the question, try to, what Judge Blount asked you. Could you take the evidence that is presented in this case and the law that's going to be given to you by Judge Blount and render a fair and impartial verdict based on strictly the evidence and the law, not giving any consideration to any outside influence such as your relationship with Dr. Amin?
> JUROR: I could be fair.

In the next exchange, after the juror said that the defendant had delivered her children, Powell asked, "Realizing that he delivered one of your children and realizing the close relationship that exists there

between doctor and mom, could you be fair and impartial?" The juror responded, "I could be fair; but, I mean, it's going to be hard for me."

In exercising its broad discretion as to strikes for cause, a trial court should consider the peculiar nature of the relationship between an obstetrician and his pregnant patient. It is difficult to imagine many more intimate relationships than this one. Further, this defendant apparently delivered more than one child for this juror, who therefore thought enough of him to return to him for the delivery. Based on the juror's equivocal responses about her ability to be fair in this situation, the trial court abused its discretion in declining to strike this juror from the panel for cause.

DECIDED JULY 15, 2002 —
RECONSIDERATION DENIED JULY 29, 2002 

*Ronald W. Hallman, Berrien L. Sutton, James D. Hudson*, for appellant.

*Coleman, Talley, Newbern, Kurrie, Preston & Holland, Wade H. Coleman, Gregory T. Talley, Keith H. Solomon*, for appellee.