## A03A2315. VALENTINE v. THE STATE.
### (592 SE2d 918)

SMITH, Chief Judge.

Antwaine Valentine was convicted by a jury of aggravated assault, sexual battery, and battery. He appeals, following the denial of his motion for new trial, as amended. Although we conclude that the evidence was sufficient to sustain the verdict, because the trial court improperly "rehabilitated" a juror who disclosed knowledge of a witness and bias against Valentine, we are constrained to reverse the judgment and remand this case for a new trial.

1. Construed in favor of the verdict, evidence was presented that Valentine rang the victim's doorbell and when the victim opened the door, Valentine asked to come inside. The victim stuck her head outside her screen door and told Valentine that she "didn't want him in [her] house." A few moments later, Valentine "snatched the screen door out of [her] hand and pushed his way into the house." The victim testified that "he grabbed me from behind and that's when he started fondling my breasts and put his hands . . . down my pants. . . . And I was screaming and hollering for my father, and telling him to stop, to get out of my house." Valentine threw the victim onto the couch and fondled her again. When the victim began screaming again, Valentine punched her in the face, cursed at her, and left the house. This testimony from the victim alone was sufficient to convict Valentine under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See, e.g., *Reyes v. State*, 250 Ga. App. 769, 770 (552 SE2d 918) (2001).

2. Even though the evidence was sufficient to uphold the jury's verdict, we conclude this case must be remanded for a new trial.

After the jury was impaneled and sworn and before the parties made their opening statements, the State's witnesses were sworn and left the courtroom. A juror then notified a bailiff that she had recognized a witness when the witness exited the courtroom. During a short colloquy between the trial court and the juror, the juror stated that she knew one of the witnesses, the victim's mother, who was a fellow church member. The trial court asked the juror, "Would the fact that you know [the witness] and you go to church with her, would that have any effect on your ability to fairly and impartially judge the guilt or innocence of this defendant?" The juror answered, "Honestly, yes . . . because she is a church member . . . and I know her personally. I did not see her sitting back there." The court then asked whether the juror would "be able to listen to her testimony and give it the same weight as any other witness" and whether she would "give this defendant a fair trial." The juror responded, "I believe I could do that." Defense counsel moved to strike the juror for cause and for substitution of an alternate juror. The State opposed the motion, and the court denied it, stating, "I'm going to leave her on there."

In *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002), the Supreme Court of Georgia stated that

> when a prospective juror has a relationship with a party to the case that is either close or subordinate, *or one that suggests bias*, the trial court must do more than "rehabilitate" the juror through the use of any talismanic question. The court is statutorily bound to conduct voir dire adequate to the situation, whether by questions of its own or through those asked by counsel.

(Emphasis supplied.) Id. at 178. Unlike the prospective juror in *Kim*, this juror did not state that she knew a party. Instead, she was familiar with a nonparty witness, the victim's mother. We cannot conclude, however, that *Kim* is strictly limited in scope to circumstances in which a prospective juror has knowledge of an actual party. On the contrary, *Kim* more broadly addresses situations in which a prospective juror has a relationship with a party "that suggests bias." Id. Here, the juror had a relationship with a close relative of the victim, and the juror candidly admitted that this relationship would affect her ability to judge fairly and impartially Valentine's innocence or guilt. This statement certainly suggested a bias against Valentine. As the Supreme Court stated in *Kim*, "[t]hough we do not see this interest as necessarily or categorically requiring her exclusion from the jury, we do see this interest as requiring the trial court to conduct

voir dire of sufficient scope and depth to ascertain any partiality. [Cits.]" Id. at 179.

Asking only two "talismanic" questions, the trial court here "conducted only a cursory, inadequate rehabilitation of the juror," a procedure forbidden by the Supreme Court in *Kim*. Id. Neither the trial court nor the prosecutor elicited sufficient information about the juror's relationship with the victim's mother "to allow the court to make an *objective* evaluation of her partiality. [Cit.]" *Cannon v. State*, 250 Ga. App. 777, 780 (552 SE2d 922) (2001), overruled on other grounds, *Jackson v. State*, 254 Ga. App. 562, 566-567 (4) (562 SE2d 847) (2002). Although trial courts generally have broad discretion in deciding whether to disqualify prospective jurors for cause, *Kim*, supra at 178, without more thorough questioning by the trial court or the prosecutor in this case, we conclude that the trial court abused this discretion in failing to excuse the juror, particularly when an alternate juror had been selected and stood ready to serve. The short colloquy between the trial court and the juror simply did not "achieve its purpose of ferreting out bias, and an abuse of discretion result[ed]." Id. at 179. A new trial is required.

3. Because we cannot determine whether the remaining issues raised by Valentine will recur on retrial, we do not reach them here.

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED JANUARY 12, 2004.

*Donaldson, Bell & Pickett, Mark L. Pickett*, for appellant.
*Kenneth B. Hodges III, District Attorney, Leisa G. Terry, Gregory W. Edwards, Assistant District Attorneys*, for appellee.

