A05A0822. GUOTH v̇. HAMILTON et al.

(615 SE2d 239)

BLACKBURN, Presiding Judge.

In this medical malpractice action, Dr. Janos Guoth appeals a jury verdict awarding plaintiff Teresa Hamilton damages arising out of Dr. Guoth's allegedly injuring her urethra when he prepared her for the caesarean-section delivery of her child. Among other things, Dr. Guoth argues that the court erred in refusing to disqualify a juror for cause who (a) knew Dr. Guoth from working at the same hospital with him, (b) believed Dr. Guoth was an incompetent physician, and (c) had heard from other hospital employees that Dr. Guoth had acted negligently in injuring Hamilton. We hold that the repeated questioning of this admittedly-biased juror that eventually resulted in her saying she would be impartial did not rehabilitate her, and that therefore the court erred in not disqualifying her for cause. Accordingly, we reverse.

The evidence showed that Dr. Guoth inserted a catheter into Hamilton while preparing her for the caesarean-section delivery of her child. He later discovered a tear in the urethra, which required Hamilton to undergo repair surgery and to suffer pain and incontinence. Hamilton sued Dr. Guoth for malpractice, attaching an affidavit from a physician that Dr. Guoth acted negligently in the insertion of the catheter.

During general voir dire, a juror stated that she knew Dr. Guoth from working with him at the hospital where the incident occurred. When the general panel was asked whether anyone knew anything about the allegations of this case, this same juror responded that she had heard other hospital employees talk of the incident in question. Before being questioned individually, the juror responded to another general question (asking if all the potential jurors could act fairly and justly) by stating: "I don't know that I could be impartial [and] forget what I've heard."

When she was questioned individually, she stated that her co-workers in the lab at the hospital where she worked had told her: "Dr. Guoth had delivered the baby and had messed her up. Somebody messed her urethra up. I didn't hear actually what he did to her, just that he messed her up, and I think she ended up having to go to

another doctor." Regarding other medical work of Dr. Guoth, she had heard "some bad things. Yes, I've heard some bad things." One bad thing was "his unsterile technique." She had heard that "there was a patient in the emergency room, and he started examining her, and he rammed his hand up in her, and he hadn't washed his hands, put gloves on or anything." As a result, she conceded, "I don't have a very high opinion [of him] — I wouldn't go to him, and I wouldn't want any of my family to go to him."

When asked now for a second time if she could be fair and impartial on this case, she stated: "I could try and have a blank slate and forget about what I've heard and listen to the evidence and go on that. . . . I could — I could try." Dissatisfied, the court pressed her, asking if she could indeed do it, not just try. She responded: "I can listen to the evidence from the case, because I don't know." Seeking to commit her to a stronger position, plaintiff's attorney asked if she could set aside what she had heard and felt and apply the law to the evidence fairly and impartially, to which she stated: "Yes, I think I could." But she then conceded that she came to the case with an understanding that Dr. Guoth may have done something wrong in this particular delivery.

The court tried again to rehabilitate her, asking her whether she was so biased or prejudiced that she could not make a fair and impartial decision. She stated that she thought she could be fair. The court pressed her further, asking the leading question: "You are not prejudging [Dr. Guoth] to have done anything wrong?" She stated, "No, sir." When asked if she had heard anything bad about two of plaintiff's other physician witnesses, she answered that she had heard bad things about both. Dr. Guoth moved that she be struck for cause, which the trial court denied. Dr. Guoth exercised a peremptory challenge to dismiss this juror from the case.

1. The trial court erred. In our 2001 seminal case of *Walls v. Kim*,[1] we emphasized:

> In too many cases, trial courts confronted with clearly biased and partial jurors use their significant discretion to "rehabilitate" these jurors by asking a version of this loaded question: After you hear the evidence and my charge on the law, and considering the oath you take as jurors, can you set aside your preconceptions and decide this case solely on the evidence and the law? Not so remarkably, jurors confronted with this question from the bench almost inevitably say,

---

[1] *Walls v. Kim*, 250 Ga. App. 259 (549 SE2d 797) (2001), aff'd but disapproved in part, *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002).

"yes." Such biased jurors likely even believe that they can set aside their preconceptions and inclinations — certainly every reasonable person wants to believe he or she is capable of doing so. Once jurors affirmatively answer the "rehabilitation" question, judges usually decide to retain these purportedly rehabilitated jurors, and on appeal such decisions are often found not to be abuses of discretion.

We decried this practice, referring to the "rehabilitation" question as becoming something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors. Id. We admonished trial judges to "err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors." Id. at 260.

Abiding by this principle, we reversed the judgment in *Walls v. Kim* where the potential juror stated she knew the defendant doctor because she had worked in the emergency room of a hospital with him. Because of that relationship, she said that she "probably hoped that the case would come out in favor of [the doctor], and she acknowledged that [the plaintiff] did not start the case on an even footing with the doctor." Id. Despite her later statement that she could decide the case on the law and facts (followed by her repeated admission that the parties did not start on equal footing), we held that the trial court abused its discretion in refusing to dismiss her for cause. Id. at 261.

The Supreme Court of Georgia affirmed this decision in *Kim v. Walls*,[2] quoting the following language from *Cambron v. State*:[3]

> Running through the entire fabric of our Georgia decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. If error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors.

(Punctuation omitted.) *Kim v. Walls*, supra at 178. See *Kier v. State*.[4] The Supreme Court held that where "a prospective juror has a relationship with a party to the case that is either close or subordinate, or one that suggests bias, the trial court must do more than 'rehabilitate' the juror through the use of any talismanic question."

---

[2] *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002).
[3] *Cambron v. State*, 164 Ga. 111, 113-114 (137 SE 780) (1927).
[4] *Kier v. State*, 263 Ga. App. 347, 348 (1) (587 SE2d 841) (2003).

*Kim v. Walls,* supra at 178. Concluding that the voir dire questioning in that case was improperly curtailed by the trial court, the Court affirmed our decision to reverse the trial court. Id. at 179. The Court disapproved *Walls v. Kim* to the extent it could be read to establish a per se rule requiring the exclusion of all jurors having an employment relationship with a party to the lawsuit. Id.

In 2004, *Remillard v. Longstreet Clinic, P.C.*[5] reiterated:

> Jurors, however, must be free from bias and prejudice re-garding the trial's outcome. And as recently established by our Supreme Court, a trial court cannot rehabilitate a biased juror simply by asking a talismanic question, such as whether the juror can set aside his personal feelings and decide the case based solely on the evidence and the law. In other words, a court may not cut off inquiry and rely on an affirmative answer to a rehabilitative question from the bench as a talisman to show that the juror has magically, suddenly become unbiased and impartial. Nor may counsel or the trial court browbeat the juror into affirmative answers to reha-bilitative questions by using multiple, leading questions. The court instead must conduct an inquiry, either through its own questioning or allowance of questions by counsel, sufficient to evaluate the potential juror's fairness and im-partiality. A trial court has broad discretion in making this evaluation, and we will not reverse its ruling absent a manifest abuse of discretion.

(Punctuation and footnotes omitted.)

*Doss v. State*[6] applied these principles. In that case, the defen-dant was accused of child molestation, and the juror in question had been molested as a child and harbored prejudices against men who engaged in such conduct. In upholding the trial court's decision not to excuse the juror there, *Doss* emphasized that the court's questioning was not coercive and that unlike cases where the jurors had to be excused, the juror "did not know any of the parties to the case, had no personal knowledge of the facts, and did not indicate anything other than a general dislike of a particular type of act." (Punctuation omitted.) Id. at 212 (4). Even so, we advised that granting the motion to strike "would have been the better practice." Id. at 213 (4). See

---

[5] *Remillard v. Longstreet Clinic, P.C.,* 267 Ga. App. 230, 231 (599 SE2d 198) (2004).
[6] *Doss v. State,* 264 Ga. App. 205, 208-213 (4) (590 SE2d 208) (2003).

*Powell v. Amin*[7] ("the better practice is for judges simply to use their discretion to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call").

Here the prospective juror did know one of the parties from working at the same hospital with him. See *Walls v. Kim*, supra at 260 (juror knew defendant doctor from working at same hospital with him). Fellow employees, with whom she worked regularly, had poisoned her mind regarding the facts of this particular case, having told her that Dr. Guoth had "messed up" Hamilton's urethra in his treatment of her. See *Torres v. State*[8] (extrajudicial knowledge about facts of case may bias juror). She also indicated more than a general dislike for the acts of medical malpractice at issue. She plainly stated that she not only would not allow her family to be treated by Dr. Guoth, but in describing what she had heard regarding his medical treatment of a female patient without proper sterility precautions, she used the words "rammed his hand up in her," showing her unabashed disdain for his medical techniques. It is hardly surprising that when the general question was posed to all jurors whether they could act fairly and impartially, she immediately volunteered that she had misgivings about her ability to do so. Only after repeated leading questions from the plaintiff's attorney and from the court did she eventually say that she could try to be impartial; even so, she conceded that she was starting with the understanding that Dr. Guoth had done something wrong.

This case is analogous to *Kier v. State*, supra, in which the trial court failed to strike from the jury panel a corrections officer who worked at the facility where the defendant was incarcerated for the very charges being tried. We reversed, holding:

> The nature of this prospective juror's duties as an employee of the jail in which [the defendant] was incarcerated, his close identification with the criminal process, and his admitted familiarity with [the defendant] inherently raise inevitable questions regarding possible bias, fairness, prejudice or impermissible influence upon jury deliberations.

(Punctuation omitted.) Id. at 349 (1). Similarly, the nature of the juror's duties here as an employee of the hospital where Dr. Guoth worked and actually performed the acts in question, her close identification with the employees who told her negative things about Dr.

---

[7] *Powell v. Amin*, 256 Ga. App. 757, 758 (1), n. 1 (569 SE2d 582) (2002), quoting *Walls v. Kim*, supra at 259-260.

[8] *Torres v. State*, 253 Ga. App. 318, 320 (2) (558 SE2d 850) (2002).

Guoth, and her admitted familiarity with and distrust of Dr. Guoth inherently raised inevitable questions regarding possible bias, fairness, prejudice or impermissible influence upon jury deliberations. The trial court should have dismissed her for cause.

Contrary to plaintiff's arguments, the repeated, leading questions that eventually resulted in the juror's reversing her position and stating that she would try to hear the case impartially did not rehabilitate her. The tone, direction, and repetitive nature of the questions from the court and plaintiff's counsel clearly gave signals to the juror that she should acquiesce and lay claim to an ability to be impartial despite her strongly-held feelings and knowledge. See *Walker v. State*[9] (court's questioning "was more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality"; trial court abused its discretion) (punctuation omitted); *Ivey v. State*[10] ("after being confronted repeatedly with variations of the rehabilitation question, she abandoned her own answers and adopted the court's words"; trial court abused its discretion); *Foster v. State*[11] (lengthy and repeated questioning extracted statement of impartiality; trial court abused its discretion).

Accordingly, we hold that the obvious bias inherent in this juror's employment and particular knowledge of the party and of the facts of this case mandated that the court excuse her for cause, especially after she candidly admitted that such would interfere with her ability to be impartial. Her later acquiescence to the court's and plaintiff's repeated requests that she nevertheless be impartial did not rehabilitate her. See *Park v. State*[12] ("jurors who have expressed a bias may well mistakenly believe they can set aside their preconceptions and inclinations — certainly every reasonable person wants to believe he or she is capable of doing so") (punctuation omitted). The trial court abused its discretion in not dismissing her from the panel.

Failure to dismiss a juror for cause is reversible error in criminal cases even if the defendant did not exhaust all his peremptory challenges. *Wallace v. State.*[13] Although this rule has not been expressly applied to civil cases, that is irrelevant here, as the record reflects that Dr. Guoth exhausted all his peremptory challenges. See OCGA §§ 15-12-122 (b) (six peremptory strikes allowed to each party from full panel of twenty-four); 9-11-47 (b) (additional peremptory challenge allowed where alternates chosen). "As all the [defendant's] peremptory challenges were exhausted in this case, a new trial is

[9] *Walker v. State*, 262 Ga. 694, 696 (2) (424 SE2d 782) (1993).

[10] *Ivey v. State*, 258 Ga. App. 587, 592 (2) (574 SE2d 663) (2002).

[11] *Foster v. State*, 258 Ga. App. 601, 608-609 (3) (574 SE2d 843) (2002).

[12] *Park v. State*, 260 Ga. App. 879, 881 (1) (581 SE2d 393) (2003).

[13] *Wallace v. State*, 275 Ga. 879, 881 (3) (572 SE2d 579) (2002).

required." *Meintzer v. Weinberg.*[14]

Finally, "[a]s we stated in *Cannon v. State*,[15] we deplore the significant burden a retrial will impose, not only on the [parties], but on the community as well. We are particularly troubled by the trial court's willingness to infect a trial with this kind of error when a solution (excusing the juror for partiality) was so readily available." (Punctuation omitted.) *Park*, supra at 881-882 (1).

2. Based on our decision in Division 1, the remaining enumerations of error are moot.

*Judgment reversed and case remanded for new trial. Miller and Bernes, JJ., concur.*

DECIDED MAY 25, 2005.

*Hall, Booth, Smith & Slover, Anthony A. Rowell, Thomas M. Burke, Jr.,* for appellant.

*Fulp & Holt, Carl G. Fulp III, Judy H. Varnell,* for appellees.

---

[14] *Meintzer v. Weinberg*, 212 Ga. App. 307, 308 (1) (441 SE2d 774) (1994).
[15] *Cannon v. State*, 250 Ga. App. 777, 780 (1) (552 SE2d 922) (2001).