A05A2292. BROWN et al. v. COLUMBUS DOCTORS HOSPITAL, INC.

(627 SE2d 805)

ADAMS, Judge.

Minnie Lee Brown died, and her husband and estate brought suit against Columbus Doctors Hospital, Inc. and others alleging, among other things, wrongful death caused by medical negligence. The case went to trial, and the jury returned a verdict in favor of all defendants. Brown's husband and estate appeal on the sole ground that the trial court erred by failing to strike a juror for cause.

The goal of the jury selection process is to ensure the selection of a fair and impartial jury: "[T]he broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. . . . [I]f error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors." *Cambron v. State*, 164 Ga. 111, 113-114 (137 SE 780) (1927). And trial judges have the duty and broad discretion to ensure it is so: "[T]rial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon 'the ordinary general rules of human experience,' [cit.], and a trial court may only be reversed upon a finding of 'manifest abuse' of that discretion. [Cit.]" *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002).

Artie Lewis Brown, the decedent's husband, together with Joseph Brown, the administrator of her estate (hereinafter "Brown"), contend that Ron Collier, prospective juror number 24, demonstrated that he was not qualified to serve as a fair and impartial member of the jury because (1) he held opinions that were so fixed and definite that they would not be changed by evidence or the charge of the court and (2) he had a financial and working relationship with defendant Doctors Hospital.

During the general questions asked of the panel on voir dire, Collier indicated that if he were the plaintiff, he would not want someone in his frame of mind to be sitting as a juror on the case. He indicated that he could not put aside any sympathy or prejudice that he might feel and render a true verdict. During the individual questioning, Collier testified that he had worked for health care companies for 26 years, that his company had a current business relationship with Doctors Hospital, and that his economic livelihood depends in part on sales to that hospital. He testified that the malpractice crisis was having a direct effect on his business and that he could not discount that the effect on his business would tend to color his view of the case from the beginning.

Following the above testimony and more, one defense counsel asked,

Given all your circumstances you've already discussed, do you think that you would be able to decide this case based on the law from the Judge and the facts that you hear from the witness stand, be fair and impartial?

As part of a longer answer, Collier said that he had seen "the good, the bad, and the ugly," apparently in the medical industry, but he was not asked to clarify. He added that if a family member needs medical care, he makes sure to "select the team." Collier then said, "So can I be fair and impartial? In many ways, yes. But then some ways, it's hard to." Then after stating that "malpractice has gotten out of control in some ways," and after talking about the effect of malpractice cases on the medical industry, he said, "So that's hard for me to, you know, forget about that piece. So yeah, I've some prejudices both ways."

Counsel for the hospital then asked,

Does the fact that you sell to doctors right now or that Kimberly Clark sells, would that prevent you from being fair and impartial to Artie Brown and Joseph Brown in this case and look at the facts and evidence in the case and decide the case based on that?

But Collier's rambling answer cannot be read as indicating that he would be fair and impartial. In the most relevant part he said, ". . . could I be impartial? Probably. But I'd think about that, too. . . ." Again, counsel asked a question to see if Collier could decide based on the evidence:

But could you listen to the expert witnesses who come and testify about what should or should not have been done for Ms. Brown, whatever her condition was, and decide whether a nurse or a physician, you know, violated the standard of care?

Collier responded ambiguously at best:

That's a tough question, because experts are only, I mean, there are different kinds of experts. I'm an expert on a lot of things myself. And I don't know what — there are so many standards of policy, and sometimes they are all different within each hospital. So I guess if I knew what the standard in that hospital was, maybe, but . . . [i]t's hard to answer that question directly. I'm sorry.

Once more, defense counsel asked whether Collier would have an open mind and decide based on the evidence and the jury charge:

> If you are picked to serve on a jury, given the fact that you do business with doctors and given what you know from your experience, could you listen to their witnesses, give them a fair shake, have an open mind, hear what they have to say, the same way you might listen to our witnesses and hear what our witnesses have to say and then make up your own mind based on what you hear from the courtroom and the charge from the court?

Collier answered, "Let me just say it is going to be a difficult task for me in this situation. That's all I can tell you. Would I listen? Absolutely. Can I say my prejudices won't enter into it? Absolutely not. So that's all I can say." Collier was not questioned further by counsel or the court.

When Brown moved to strike Collier for cause, the court ultimately held, "Number 24, [Collier], is very similar to thirty-four. They both say it's going to be difficult. But I think they can rise to the occasion. So I'll leave [Collier] on." Brown used one of his peremptory strikes to remove the juror.

"The law presumes that potential jurors are impartial." *Cohen v. Baxter*, 267 Ga. 422, 424 (479 SE2d 746) (1997). And the striking party bears the burden of rebutting that presumption. *Kim*, 275 Ga. at 179. In this case Brown rebutted that presumption. Collier indicated that if he were the plaintiff, he would not want someone in his frame of mind to be sitting as a juror on the case and that he could not put aside any sympathy or prejudice that he might feel and render a true verdict. He also gave two related reasons for prejudging the case: the case could affect his economic livelihood because his company had an ongoing relationship with the hospital, and malpractice suits in general were affecting his economic livelihood. When asked three times if he could act as an impartial juror despite these predispositions, he responded that it would be difficult for him to do so, and he "absolutely" could not say that the identified prejudices would not enter into his decision.

In *Valentine v. State*, 265 Ga. App. 139 (2) (592 SE2d 918) (2004), this Court held that the trial court erred by conducting only a cursory, inadequate rehabilitation of the juror once it was shown that the juror had a relationship with the defendant hospital that suggested bias. The juror knew the sexual battery victim's mother and went to church with her. The juror said that her relationship with the victim's mother, a witness, would affect her ability to act fairly and impartially. Id. at 140 (2). The court then asked "talismanic" questions —

would the juror be able to listen to the witness's testimony and give it the same weight as any other witness and could she give the defendant a fair trial. Id. The juror responded, "I believe I could do that." Id. This Court, following *Kim*, held that the trial court conducted an inadequate rehabilitation of the juror because the questions failed to elicit sufficient information about the juror's relationship with the victim's mother to make an objective evaluation of her partiality. Id. at 141 (2).

The facts of *Powell v. Amin*, 256 Ga. App. 757, 758-759 (1) (569 SE2d 582) (2002), are similar to the present case in that the juror had an occasional business relationship with the defendant; he acknowledged that being impartial would probably be difficult for him; and he said that if he were the plaintiff, he probably would not want himself as a juror. Id. at 758 (1). The trial court attempted to rehabilitate the juror with one talismanic question then seated the juror. This Court reversed and held that although the juror's relationship with the defendant did not " 'necessarily or categorically require his exclusion from the jury,' the relationship did require 'the trial court to conduct voir dire of sufficient scope and depth to ascertain any partiality.' [Cit.]" Id. at 759 (1).

Here, the trial court focused on only part of Collier's explanation of his state of mind: that it would be difficult for him to be impartial. Neither the court nor the prosecutor asked any further questions of the juror after he described his prejudices and stated that he "absolutely" could not say that they would not enter into his decision. And his earlier answers in voir dire did nothing to assure that he could be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. Finally, although defense counsel attempted three times to rehabilitate him, Collier never answered that he could be fair and impartial.[1]

> [W]hen a prospective juror has a relationship with a party to the case that is either close or subordinate, or one that suggests bias, the trial court must do more than "rehabilitate" the juror through the use of any talismanic question. The court is statutorily bound to conduct voir dire adequate to the situation, whether by questions of its own or through those asked by counsel.

---

[1] Although at one point early in the questioning, Collier said that he had prejudices "both ways," neither defense counsel nor the court inquired as to the meaning of his comment and whether one set of prejudices would outweigh the other.

*Kim*, 275 Ga. at 178. Because the trial court did not ferret out bias, an abuse of discretion resulted, and a new trial is required. *Valentine*, 265 Ga. App. at 141 (2); *Powell*, 256 Ga. App. at 758-759 (1).

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 10, 2006 —
RECONSIDERATION DENIED MARCH 6, 2006 —

*Taylor, Harp, Callier & Morgan, John S. Taylor, Jefferson C. Callier*, for appellants.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, John K. Train IV*, for appellee.