**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0505. SCARPACI et al. v. KAUFMAN et al.

PHIPPS, Chief Judge.

Kaitlyn Scarpaci and Sean Garrett (collectively, "the Garretts"), as next friends and parents of Aubrey Garrett, a minor, sued Paul L. Kaufman, M. D., Jeffrey A. Carlisle, M. D., and Thomas Eye Group, P. C., among others, for medical malpractice after Aubrey Garrett lost vision in both eyes within three months of her premature birth. The jury found in favor of the physicians and Thomas Eye Group, and the Garretts appeal. They contend that the trial court erred by failing to strike for cause three jurors who had indicated on voir dire that they were biased in favor of the defendants. For the reasons that follow, we reverse.

Civil litigants have the right to strike a jury from a full panel of qualified and competent jurors.[1] Jurors "must be free from bias and prejudice regarding the trial's outcome."[2] "A potential juror must be excused for cause based on partiality . . . if he or she holds an opinion so fixed and definite that he or she will be unable to set it aside and decide the case based on the evidence and the court's charge on the evidence."[3] To rehabilitate a biased juror, a trial court "must conduct an inquiry, either through its own questioning or allowance of questions by counsel, sufficient to evaluate the potential juror's fairness and impartiality. A trial court has broad discretion in making this evaluation, and we will not reverse its ruling absent a manifest abuse of discretion."[4]

> [T]he broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. . . . In the interest of fair trial, if

---

[1] See *Stolte v. Fagan*, 291 Ga. 477, 478-479 (1) (731 SE2d 653) (2012).

[2] *Guoth v. Hamilton*, 273 Ga. App. 435, 438 (1) (615 SE2d 239) (2005).

[3] *Elliott v. Home Depot U. S. A.,* 275 Ga. App. 865, 867 (2) (622 SE2d 77) (2005) (footnote omitted).

[4] *Guoth*, supra (citation omitted).

error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors.[5]

1. During general questioning of the whole jury panel, Juror No. 5 acknowledged that she was a patient of a doctor with Thomas Eye Group. She indicated that she had medical training, that she had "concerns about medical malpractice lawsuits and jury verdicts in general," and that she was a potential juror who was "already leaning to one side or the other."[6]

During individual questioning of the whole panel, when the trial court asked "who thinks that they cannot be fair and impartial in this case[?]," Juror No. 5 raised her hand. Soon thereafter, the trial court asked Juror No. 5 to "tell me about your difficulties with being fair and impartial in this case." Juror No. 5 responded, "I am a health professional and I'm afraid – I'm a little biased towards the health professionals in this case." The trial court asked Juror No. 5 whether there was anything else she wanted to "bring up about that," and Juror No. 5 replied, "I just -

---

[5] *Cambron v. State*, 164 Ga. 111, 113-114 (137 SE 780) (1927); see *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002).

[6] During general questioning, Juror No. 5 had raised her hand when the panel was asked if there was anyone who was predisposed to rendering a verdict in favor of the child based on sympathy.

I don't know the ins and outs, so I really can't say for sure, but (unintelligible)." Defense counsel then posed the following, "Grant it you're a health professional. . . . The bottom line is: Do you believe that you would be able to listen to the evidence in the case fairly and objectively and follow the law as the judge gives it to you on the burden of proof (unintelligible) malpractice? Would you be able to do that?" Juror No. 5 replied, "Probably."

After the court had excused some jurors, further individual questioning commenced, and Juror No. 5 was questioned. Juror No. 5 stated that she was a physical rehabilitation nurse, and that she had never served on a jury before. The following then ensued.

> [PLAINTIFFS' ATTORNEY ]: Earlier in the day we asked you some questions, and I think you said something about – that you would have a bias toward the defense; that it weighed on your conscience the idea of having to rule, if you were a juror, against doctors or hospitals.
> JUROR NO. 5: This is the field that I work with, so – yeah, I would – you'd have to prove to me that something was actually done wrong for me to vote against them. I know this is a preponderance and I have a problem with because I don't know how much – preponderance is really – everybody uses that word differently. I don't know, I mean, how much of – how much of a percentage or whatever the whole that has to be proved or –
> [PLAINTIFFS' ATTORNEY]: You're a nurse, by training?

4

JUROR NO. 5: Uh-huh (affirmative).

[PLAINTIFFS' ATTORNEY]: And how long have you been doing nursing?

JUROR NO. 5: Almost 30 years.

[PLAINTIFFS' ATTORNEY]: And has it all been in clinical nursing?

JUROR NO. 5: Yes.

[PLAINTIFFS' ATTORNEY]: And where is it that you've worked?

JUROR NO. 5: I worked in various hospitals across the country. I've worked in Chicago – a suburb of Chicago; Alabama, Florida, and here.

[PLAINTIFFS' ATTORNEY]: And other than your job as a nurse, have you ever worked in any other capacity in the last 30 years?

JUROR NO. 5: No.

[PLAINTIFFS' ATTORNEY]: You mentioned a preponderance of the evidence. Isn't it true, ma'am, that if you were picked as a juror that you would have strong feelings in favor of the defense, no matter what the jury instructions were, because of your life's experience?

. . . .

JUROR NO. 5: Like I said, my – my bias is going to lean towards them until I'm shown otherwise.

[PLAINTIFFS' ATTORNEY]: We're not starting off equally in this case; isn't that correct?

JUROR NO. 5: Probably.

An exchange next occurred between the trial court and Juror No. 5 about the "preponderance of the evidence" standard.

THE COURT: [Y]ou had some issues about whether preponderance of the evidence is the right standard?

JUROR NO. 5: I just don't know how much the preponderance of – there's got to be an overwhelming amount of the evidence.

. . . .

THE COURT: [I]n general, preponderance means more likely than not. That's all it means. Do you have an issue with applying that in a medical malpractice case?

JUROR NO. 5: No. . . . But I would still have to say – I need to see proof to show me that there was actually something that could have been done differently for me to go the other direction.

Thereafter, a defense attorney questioned Juror No. 5. He asked her, "regardless of what your leanings were when you came into this courtroom, if you were instructed that – your job in this case is to set your leanings aside, evaluate the facts and the evidence objectively, and then listen to the law the Court gives you. . . . Do you think you would be able to do that?" Juror No. 5 replied, "I have an issue with damages." Upon further questioning, Juror No. 5 indicated that she could follow instructions from the court on "what is awardable" and on what standard to use in the event of a decision to make an award. The following exchange then occurred between a different defense attorney and Juror No. 5.

[DEFENSE ATTORNEY]: [S]o the only burden [of proof] you're going to hold the plaintiff's to is that the legal burden is they have to prove by whatever the law the judge charges you, what the negligence was?

JUROR NO. 5: If there was or –

[DEFENSE ATTORNEY]: If there wasn't. And if there was negligence and you believed it caused damages and you were instructed to find for the plaintiff under that circumstance award damages, could you do that?

JUROR NO. 5: Yeah.

[DEFENSE ATTORNEY]: And if there wasn't negligence and you found the defendants were negligent, you could find for the defendants?

JUROR NO. 5. Correct.

The plaintiffs' attorney then asked Juror No. 5 whether "in your heart of hearts, even if you were to find for [the child] and against these doctors, . . . you wouldn't be able to really award an amount of money above the amount of the cost of her medical care?" Juror No. 5 responded, "I would be reluctant to." One of the defense attorneys then asked Juror No. 5 whether she would follow the judge's charge on the *law of damages*, and Juror No. 5 replied, "I don't think I have a choice in the matter, do I?"

The trial court denied the Garretts' motion to strike Juror No. 5 for cause. On appeal, the Garretts argue that the trial court erred in denying its motion to excuse Juror No. 5 for cause because, among other things, she "came into the case biased;

7

was a patient of one of the Defendants; demanded that the Garretts produce an 'overwhelming' amount of evidence to overcome those preexisting leanings; professed an inability to weigh and value the evidence fairly; . . . and expressed a 'reluctance' to award [the child] what the law would allow." The Garretts further claim that, "[n]ot once did [Juror No. 5] directly answer a single question about setting aside bias[.]" The appellees maintain that, notwithstanding any initial leanings, the follow-up questions by the trial court and the parties showed that Juror No. 5 could set aside any leanings and fairly judge the case.

(a) Although Juror No. 5 was a patient of a doctor employed by one of the defendants, she was not required to be excused for cause for that reason.[7] Moreover, the ground for the motion to remove the juror for cause was not that she was a patient of one of the defendants, but rather, that she had "indicated that she had a bias in favor of the defendants due to her being in the medical profession." And Juror No. 5 testified that she was biased because she was a health professional, not because she was a patient of a doctor employed by one of the defendants. Consequently, whether Juror No. 5 was biased because she was a patient of a doctor employed by one of the

---

[7] See *Cohen v. Baxter*, 267 Ga. 422, 423 (1) (479 SE2d 746) (1997) ("The fact that the doctor-patient relationship exists between a juror and a defendant does not justify removing . . . discretion from the trial courts" to retain or to dismiss a juror).

defendants is speculation, and based on the transcript of voir dire, the Garretts have failed to carry their burden of showing disqualification on that basis.[8]

(b) Nor does it appear that Juror No. 5's responses regarding the issue of damages in the case mandated her disqualification. "A juror who indicates a willingness to try to be objective and whose reservations relate to an *issue* in the case rather than to a party may be eligible for service."[9]

(c) We find, however, that as it concerned Juror No. 5's ability to be fair and impartial to the parties in the case, the trial court manifestly abused its discretion in failing to strike Juror No. 5 for cause.

> Before voir dire, jurors are required to take an oath to "give true answers to all questions as may be asked by the court or its authority." Where a prospective juror, who has been asked whether he or she can be fair and impartial in the case, answers under oath a plain, "No," and provides an explanation of her inability to be fair and impartial, the court should limit further questions to clarification of the answer.[10]

---

[8] See generally *Poole v. State*, 291 Ga. 848, 854 (3) (734 SE2d 1) (2012) (reiterating that the burden of proving partiality rests with the party seeking to have the juror disqualified).

[9] *Wood v. B&S Enterprises,* 314 Ga. App. 128, 135 (4) (723 SE2d 443) (2012) (punctuation and footnote omitted; emphasis supplied).

[10] *Foster v. State*, 258 Ga. App. 601, 608 (3) (574 SE2d 843) (2002) (footnotes omitted).

9

And a court cannot "rehabilitate a biased juror simply by asking a talismanic question, such as whether the juror can set aside his personal feelings and decide the case based solely on the evidence and the law."[11] Although the proper procedure was followed in this case, the trial court's denial of the motion to strike Juror No. 5 for cause was not supported by any "evidence brought out by questioning by the trial court or counsel that re-establishe[d] the juror's impartiality[.]"[12]

When the trial court asked whether there were any potential jurors who could not be fair and impartial in the case, Juror No. 5 raised her hand, indicating that she could not do so. Upon request from the trial court, Juror No. 5 provided an explanation of her inability to be fair and impartial – she stated that she was a health professional who would be biased toward the health professionals in the case.

Later in voir dire, further questions to clarify her prior explanation were put to Juror No. 5. The juror discussed her work experience of almost 30 years as a nurse, and she stated that she was biased toward the defense because of her field of work. She further stated that she would lean toward the defendants until she was shown otherwise, and that, in all likelihood, the parties were not starting off equally. By the

---

[11] *Elliott*, supra (footnote omitted).

[12] *Poole*, supra.

10

end of her questioning, although she had indicated an ability to follow the judge's charges as to the *issue* of damages, she never retracted her earlier professed inability to be fair and impartial to the parties, she never retracted the "leaning" she said she had toward the defendants, she never retracted her statement that the parties were not starting off equally in her mind, and although she affirmed that she could apply the appropriate preponderance of the evidence[13] burden of proof, she demonstrated an inability to be fair when she affirmatively stated that in order for her to come to the Garretts' side, she would require proof not mandated by the law – that there was "actually something that could have been done differently."[14]

During individual questioning, when the talismanic question was put to her whether she could follow the jury's charge to set aside her leanings, evaluate the facts

_____

[13] *Zwiren v. Thompson*, 276 Ga. 498, 499 (578 SE2d 862) (2003) ("Medical malpractice being a civil cause of action, a plaintiff must prove liability[,] i.e., duty, negligence, proximate cause[,] by a preponderance of the evidence.") (citation omitted).

[14] See *Haughton v. Canning*, 287 Ga. App. 28 (2) (650 SE2d 718) (2007) ("Three elements are essential to establish a medical malpractice claim: the doctor's duty to his patient; the doctor's breach of that duty through the failure to exercise the requisite degree of skill and care; and an injury proximately caused by the doctor's failure.") (citation omitted); *Zwiren*, supra (preponderance of the evidence standard "requires only that the finder of fact be inclined by the evidence toward one side or the other") (citation and punctuation omitted).

and the evidence objectively, and listen to the law the court would give, Juror No. 5 did not answer the question. Instead, she stated that she had a problem with the issue of damages, which issue dominated the remaining questions put to her, with the exception of one question which yielded an arguably impartial response from the juror. A defense attorney asked Juror No. 5 a compound (and confusing) question about the "only" burden of proof as to "negligence" to which she would hold the plaintiffs, and about finding for a party if she found that "negligence" did or did not cause "damages." However, considering the entirety of the voir dire, the juror's responses in that incomprehensible exchange with a defense attorney, "did nothing to assure that [she] could be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial."[15]

---

[15] *Brown v. Columbus Doctors Hosp.*, 277 Ga. App. 891-892, 894 (627 SE2d 805) (2006) (rambling answer could not be read as indicating that juror would be fair and impartial); see *Foster*, supra at 607-609 (3) (where juror had not withdrawn her statement that she believed that she could not be a fair and impartial juror in case to be tried, and that even after hearing the evidence and instructions from the judge, her preconceived feelings about the case might influence her thoughts, subsequent interrogation by the court and the prosecutor proceeded in a manner calculated to elicit a response contrary to the one originally given and was nothing more than an effort to justify finding a biased juror qualified; juror should have been excused for cause); *Ivey v. State*, 258 Ga. App. 587, 592 (2) (574 SE2d 663) (2002) ("A trial court may not rely solely on a prospective juror's extracted statement of impartiality, where, as here, consideration of the entirety of the voir dire reveals a prospective juror with a fixed and definite bias that she was unable to set aside in deciding the case.")

12

In this case, Juror No. 5's impartiality was never re-established by evidence brought out by questioning by the trial court or counsel.[16] "Because the trial court did not ferret out bias, an abuse of discretion resulted, and a new trial is required."[17]

2. In view of our ruling in Division 1, we need not address the Garretts' contentions regarding the other two jurors.

*Judgment reversed. Ellington, P. J., concurs. McMillian, J., concurs in the judgment only.*

---

(footnote omitted).

[16] *Poole*, supra.

[17] *Brown*, supra at 895 (citations omitted); see generally *Foster*, supra; *Ivey*, supra (where juror repeatedly informed trial court that she had already formed an opinion about the defendant's guilt or innocence and that her personal experience would not permit her to be impartial in the case, juror reiterated the same to the prosecutor during his efforts to rehabilitate her, and after being confronted repeatedly with variations of the "rehabilitation" question, juror abandoned her own answers and adopted the court's words, trial court manifestly abused its discretion in failing to strike juror for cause; record as a whole failed to support the court's finding that the juror could put aside her bias to render an impartial verdict); *Meintzer v. Weinberg*, 212 Ga. App. 307 (1) (441 SE2d 774) (1994); *Parisie v. State*, 178 Ga. App. 857, 858-859 (2) (344 SE2d 727) (1986) (trial court manifestly abused its discretion in failing to excuse a juror for cause, where juror stated that he was not impartial between the state and the accused, he could not judge the case fairly, he would be influenced by previous events in his life, and there was no indication that juror equivocated about his impartiality).